Complainant prays that defendant, a former employee, be restrained from disclosing confidential information and from working for a competitor. Complainant's principal product is electrical insulating material made of textiles or paper coated with varnish. In this field, it does about one-third of the total business of the country. It has secret formulas for making the varnish but these are unknown to defendant and do not figure in the suit. It claims that its machines and mechanical processes, or some of them, are secret, and bases its case in large degree upon this allegation.
Defendant, in 1918, when he was twenty-two years old, entered the employ of complainant and remained with it until June 1st, 1944, when he resigned. He started in as a mechanic in the department charged with the maintenance of machinery; in 1922, he became machine shop foreman and thereafter, at different times, had sundry titles — plant superintendent, chief engineer, master mechanic. His highest pay was at the rate of $350 a month. Early in 1942, complainant prepared a form of agreement which it persuaded seventy-three of its principal employees to execute, among them, the defendant. In consideration of his employment, he entered into certain covenants; one that he would keep secret, neither disclosing to others, nor himself making use of, "confidential information concerning employer's business, a knowledge whereof may be acquired by employee in connection *Page 136 
with his said employment; provided, however, that except as to matters which are technically trade secrets of employer * * * the operative effect of this paragraph shall be confined to the United States and to a period of two years from the date of cessation of employment aforesaid."
Complainant prays that defendant be enjoined during a period ending May 31st, 1946, from disclosing or using confidential information "including specifically all information whether written or unwritten concerning complainant's machinery, equipment and processes." Observe that complainant does not rely upon so much of the covenant as relates only to "matters which are technically trade secrets."
Defendant further agreed, for a period of two years following the cessation of his employment, to refrain from being engaged in, or employed by, any competing business enterprise located in the United States. Shortly after defendant resigned his position, he applied to Electro-Technical Products, Inc., for work and was engaged by that company and given the title of plant engineer. His salary was fixed at $400 a month, or $50 more than he had been paid by complainant. Two of Electro's products are in competition with complainant's. Complainant prays that defendant be enjoined until May 31st, 1946, from being engaged in, or employed by, any business enterprise located in the United States, competing with complainant, including specifically Electro.
Much of complainant's machinery has been designed by its own staff and most of it has been altered to meet its special and changing needs. Its machines, however, are all of well known types. The differences between its apparatus and that in other plants performing like service, do not seem to be important. Complainant's engineers are continually trying to develop new products within its field, to improve quality and to reduce costs. A new raw material may be introduced, or some other change made in a varnish formula; more heat must be applied; economy will be advanced if a machine operates more rapidly. Gears are changed; a different kind of cutting edge is substituted. Occasionally, something novel is developed and in such case complainant may procure a *Page 137 
patent, but usually there is nothing patentable, merely the ingenious application of well known devices or methods to the particular problems presented. The process of experimentation, of trial and error, and adjustment, is going on continually and has been a large factor in establishing and maintaining the competitive position of complainant.
Complainant confined its proofs to machines as distinguished from processes. It did not attempt to show that defendant has confidential information concerning the speed at which a machine should run, or the degree of heat to be applied, or anything of that sort. The evidence embraces only the design of machines, and even here the proofs are most general. A few details did come out, however, which assist the court in reaching a decision. For instance, on one set of machines, complainant uses ball bearings; the corresponding machines of a competitor have, instead of bearings, bushings or sleeves on the axles to reduce friction. Both are standard devices employed for the usual purpose. Whether the one or the other be adopted, depends on such factors as load and speed. Van Norde's knowledge that complainant's machines had bearings is not confidential.
There are other difficulties. Complainant has not taken proper measures to protect the secrecy of its so-called refinements and improvements of the machinery. Some of the work was done by outside machine shops, without any request to regard the designs as confidential. In one instance, complainant lent its blueprints to another company so that it might duplicate the machine for its own use — without a pledge of secrecy. Lastly, complainant has procured patents on everything patentable, except where its patent counsel considered it inadvisable to apply for a patent. Of course, there may be confidential information with respect to things not patentable. We may say that what complainant has a right to protect, that what comprises confidential information about its machines, is knowledge of a mechanical device or principle, or application thereof, which is not known generally to its competitors' engineering staffs, and which they cannot readily learn by consulting an expert. Complainant has failed to prove that defendant has such information. *Page 138 
Let us assume, however, that defendant possesses confidential information. An injunction in general terms, forbidding the defendant from himself using or divulging to others confidential information which he had acquired in the course of his employment, would not inform him with reasonable certainty what he is forbidden to do. If such an injunction were to issue and the defendant were charged with its breach, it would be most difficult for the court to determine his guilt or innocence. But the proofs which have been presented, do not permit the drafting of a more specific injunction. A general injunction of this sort should be denied. Taylor Iron and Steel Co. v. Nichols,73 N.J. Eq. 684, 689; Evening Times, c., Co. v. American, c.,Guild, 124 N.J. Eq. 71, 76.
There is still another reason why complainant cannot succeed on this branch of the case. The case is devoid of proof of inequitable conduct of a character frequently found in litigation of this general type. Electro did not entice the defendant away from his employer in order to gain complainant's secrets. Defendant became dissatisfied with his position with complainant, voluntarily resigned and then applied to Electro for work. Despite the demand for skilled machine men, he went with his new employer for a salary of only $400 a month. This circumstance alone is an indication that he did not agree to sell confidential information. When defendant left complainant, he did not abstract from its files any papers, he took no tracings of machinery designs, no memoranda of any kind. There is no proof that he has divulged or intends to divulge confidential information. He was employed by Electro from June 15th to October 3d 1944, when an interlocutory injunction issued in this cause. While there, his principal tasks were renovating the system for heating the building and superintending the construction of additional office space. He also did some work on the machinery, a friction calendar — not used in making a product which is competitive with complainant — and a drying oven or festooning machine which is used for coating wall paper, but which could be used, and which Electro perhaps intended to use, in making bottle cap liners in competition with complainant. He made some changes in the gearing so *Page 139 
that the machine would take wider paper than it had theretofore, and he installed "idlers to take up the slack." There is no proof whatever that defendant had recourse to any confidential information, or that he was guilty of any disloyalty to complainant, in what he did to solve Electro's problems.
To authorize an injunction, the court must be reasonably satisfied that the defendant actually intends to do the act sought to be enjoined, or that the act probably will be done unless the court prevents. Meyer v. Somerville Water Co.,82 N.J. Eq. 572; Shmidheiser v. States Ave. Constr. Co., 94 N.J. Eq. 522; West Long Branch v. Home Building, c., Co., 99 N.J. Eq. 738.
True, defendant denies having any confidential information, and such a denial sometimes indicates an intention to divulge. But not in the instant cause. Defendant's attention was not directed to anything specific — such and such a device on a certain machine. He might readily have conceded that it ought not be divulged. I have no reason to believe he intends to violate any confidence.
Let us now proceed to defendant's covenant against employment with a compeetitor of complainant. "Sound public policy encourages employees to seek better jobs from other employers or to go into business for themselves. Contracts which hinder their so doing are strictly construed and rigidly scanned, and are declared void unless necessary for the reasonable protection of the employer." Haut v. Rossback, 128 N.J. Eq. 77, 478. The ordinary object of a covenant like that under consideration is the protection of the good will of the employer. In Mandeville
v. Harman, 42 N.J. Eq. 185, Vice-Chancellor Van Fleet stated it more strongly: "The legality of restrictions of this kind is put, it will be observed, exclusively on the ground that they must be upheld as valid, to prevent the destruction of a property right or interest called the good will of a trade or business." In the great majority of our reported decisions on such covenants, the defendant had been employed as a route salesman for the complainant. In all except one, of the many New Jersey cases to which I have been referred, in which the injunction *Page 140 
was granted, the contracts between the employee and the employer's customers had been such as to enable the employee to influence in whole or in part the business of such customers. InSternberg v. O'Brien, 48 N.J. Eq. 370, was considered an agreement by the employee not to work for any competitor within one year after he ceased to be employed by the complainant. The defendant had not been a salesman but had collected installment payments as they became due. His intercourse with customers had not resulted in his acquiring sufficient influence over them to enable him to exercise any appreciable control over their trade. Vice-Chancellor Van Fleet denied the injunction, stating the general principle, "A court of equity in exercising its prohibitory power, must always proceed with the utmost caution and see to it that its power is not so exercised as to do more harm than good. The power exists to prevent irreparable wrong and should not therefore be used in any case when its use will produce the very result it was designed to prevent. The rule is fundamental that an injunction should never be granted when it will operate oppressively or contrary to the real justice of the case, or where it is not the fit and appropriate method of redress under all circumstances of the case, or when the benefit it will do the complainant is slight in comparison with the injury it will do the defendant. The great office of the writ is to protect and reserve, not to destroy."
The solitary case in which an injunction has gone although the defendant was not in touch with complainant's customers, isIdeal Laundry Co. v. Gugliemone, 107 N.J. Eq. 108. The defendant had been an assistant floor supervisor of complainant's float-ironed department. While the methods of doing business used in various laundries are much alike, the complainant had developed some unique and secret methods, and the purpose of defendant's employment with complainant's competitor was to obtain the benefit of his knowledge of complainant's business methods and secrets. Mr. Justice Trenchard stated the rule that courts of equity will protect an employer against a breach of an agreement not to accept employment with a competitor where, among other things, "the purpose of the subsequent employment resulting in the *Page 141 
breach was to obtain the benefit of those secrets and that there is imminent danger that, through such subsequent employment, such secrets would be disclosed." I have already stated the absence of proof that Electro employed Van Norde in order to get confidential information about complainant's business, or that Van Norde intends to use for the benefit of Electro, or to divulge such information — if he has any. The present suit, therefore, does not come within the rule of the Ideal LaundryCase and the question is whether the principle of that case should be enlarged to embrace the facts which have been proved before me.
We can say broadly that all important manufacturing enterprises have their own engineering staffs, who are continually trying to improve their employer's manufacturing processes. They all have secrets in the same sense that complainant has, not confined to manufacturing, but extending to credit relations and financial matters, to the purchase of raw materials, to almost every branch of business. Most business men seem to consider everything connected with their own business to be highly confidential. If a contract of this sort were to be enforced by injunction against Van Norde, similar contracts could be exacted from, and enforced against, all classes of skilled employees.
In the making of such contracts, there is no bargaining, no give and take. The contract which complainant uses, obviously prepared by counsel, was printed and presented to the seventy-three employees for signature without alteration. The covenant is in a different category from one made upon the sale of a business. The vendor gets a higher price if he signs; the employee is apt to lose his job if he refuses to sign. Probably a most important effect of such covenants when made by employees, is to tie them to their employer. He need have little fear of losing key men for if they leave him, they must go into a line of business with which they are unfamiliar, and where their salaries will be smaller for a while.
There is a strong tendency to-day toward specialization. Van Norde, for instance, has been specializing for twenty-five years in machinery of the type used by complainant and its *Page 142 
competitors. If he cannot work for a competitor, both he and society will lose a great part of the benefit of his intimate knowledge of this kind of machinery. He will have to start over again, on a lower level, in some other machinery line.
Injunctions preventing a former employee from working for a competitor are, as I have pointed out, at present issued almost exclusively in cases where the defendant is in a position to influence the customers of his former employer. The use of such injunctions should be extended to other cases only with great caution. They should not issue in the absence of special equities. The contract alone is not a sufficient ground for the injunction. In the present instance, the injunction does not appear warranted and will be denied. Let the bill be dismissed.