GEORGE GODFREY, PLAINTIFF-RESPONDENT, v. THOMAS F. McGANN, CHIEF PROBATION OFFICER OF THE COUNTY OF ESSEX, JOHN A. KERVICK, TREASURER OF THE STATE OF NEW JERSEY AND THE STATE OF NEW JERSEY, DEFENDANTS-APPELLANTS, AND BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF ESSEX, AND HARRY LERNER, TREASURER OF THE COUNTY OF ESSEX, DEFENDANTS-RESPONDENTS.

Argued January 8, 1962—Decided March 5, 1962.

See also 65 *N. J. Super.* 213, 167 *A. 2d* 221.

*Mr. Theodore I. Botter,* Assistant Attorney General, argued the cause for the defendants-appellants (*Mr. David D. Furman,* Attorney General of New Jersey, attorney; *Mr. Thomas F. Tansey,* Deputy Attorney General, of counsel).

*Mr. Nicholas T. Fernicola* argued the cause for the defendants-respondents (*Mr. William J. Straub,* of counsel).

*Mr. Bernard T. Hein* argued the cause for the plaintiff-respondent (*Messrs. Hein, Smith & Mooney,* attorneys).

The opinion of the court was delivered by

PROCTOR, J. Defendants-appellants, Thomas F. McGann, Chief Probation Officer of the County of Essex, John A. Kervick, Treasurer of the State of New Jersey and The

State of New Jersey, appeal from a judgment of the Superior Court, Law Division, ordering them to satisfy a claim of the plaintiff, George Godfrey, and dismissing plaintiff's action against the defendants, Board of Chosen Freeholders of the County of Essex and Harry Lerner, Treasurer of the County of Essex. While the cause was pending before the Appellate Division, we certified it on our motion.

The facts giving rise to the present action are not in dispute and may be summarized as follows: In May 1958 the Essex County Court ordered William Cash, defendant in a criminal action, to make restitution to Godfrey in the sum of $1,700 by installment payments to the Essex County Probation Department. As of August 3, 1959, Cash had paid $1,150 in accordance with the order. An audit of August 25, 1959, conducted under the direction of the Essex County Board of Freeholders, revealed that $1,000 was missing since only $150 remained in the Cash-Godfrey account. It was later established that the missing funds had been embezzled by Frank A. Zazzaro, Cashier of the Probation Department.

The plaintiff demanded payment of the $1,150 from all of the above-named defendants, and after each denied liability, commenced this action in lieu of prerogative writ and for a declaratory judgment. In his complaint plaintiff requested that the court settle the "legal obligations of all of the defendants herein and to further enter judgment as to which of the said defendants should make payment, or alternatively, enter judgment that all of the said defendants make payment to the plaintiff, George Godfrey, of the moneys collected for and on his behalf."

In their answer the defendants, Board of Freeholders and Lerner, denied liability, asserting that the Probation Department is "part of the State Judiciary system" and therefore the State, not the county, is responsible for the defalcations of Zazzaro while he was an employee of that department. In their answer, McGann, Kervick and the State denied liability as to the missing $1,000, but stated that the Essex

County Probation Department has at all times been willing to pay to the plaintiff the $150 which remains in its hands for his benefit.

The parties stipulated that the Board of Freeholders purchased bonds from two surety companies to secure "the faithful performance of the employees (including Zazzaro) of the Essex County Probation Department." The Board named the County of Essex as the obligee of these bonds. The parties also stipulated:

"The defendant, Board of Chosen Freeholders of the County of Essex and the defendant, State of New Jersey, both admit that in accordance with the audit the monies are due to the plaintiff, George Godfrey, from either the Board of Chosen Freeholders of the County of Essex or from the State of New Jersey, each denying that it is the one obligated to pay and each contending that the other is the one legally responsible to pay."

While the action was pending a third-party complaint was filed in behalf of the defendants against the sureties demanding they "make payment of all or part of the amount demanded by plaintiff George Godfrey." This third-party action was settled, the defendants stipulating the sureties had made payments in amounts "more than sufficient to meet the demands" in Godfrey's action. The payments were made to the county which turned them over to the Probation Department.

The Superior Court, Law Division, after considering the above facts and the statutory provisions governing county probation departments (*N. J. S.* 2A:168–1 to 13) held the Essex County Probation Department is "an arm of the judicial power of the State" rather than a "county subdivision," and concluded the Department is a state agency and its officers and employees are agents of the State. 65 *N. J. Super.* 213 (1961). The trial judge considered the State's defense of sovereign immunity which was raised subsequent to the filing of its original answer and held that such defense does not bar an action to compel the exercise of an administrative duty by a state agent. He said:

"In the instant cause there is no burdening of the State through any finding of liability. Rather, the State through its agent or servant is merely being asked to turn over monies, *admittedly belonging to plaintiff*, which are now temporarily in the custody of the State * * *" *Id.*, at *p.* 216.

Thereupon the trial court entered judgment against "the defendants, State of New Jersey, John A. Kervick, Treasurer of the State of New Jersey and Thomas F. McGann, Chief Probation Officer of the County of Essex Probation Department," ordering them to pay the plaintiff "all moneys collected * * * by reason of payments made to the Essex County Probation Department by one William Cash," and dismissing plaintiff's action against the defendants Board of Freeholders and Lerner, the Essex County Treasurer.

At the oral argument on this appeal, we were told that Zazzaro's embezzlement was upwards of $40,000 and that the amount recovered from the sureties was some $28,000. It was said that payment of plaintiff's claim was withheld, even though the recovery from the sureties was more than adequate to make him whole, because of the dispute between the State and the county as to which was responsible for making up the deficiency to pay remaining claimants after the proceeds from the bonds had been exhausted. Thus the real import of the case as it now appears concerns the dispute between the State and the county as to liability for the deficiency. No one disputes that either the State or the county should make up the deficiency. The State contends the cashier of the Probation Department is a county employee, and in any event, even if the State is responsible for the defalcations of employees of the Probation Department, the doctrine of sovereign immunity prevents a judgment against it in the absence of legislative authority. The county argues that the cashier of the Probation Department is a state employee and therefore the county is not responsible for the shortage. However, the county does not contend that it is free from liability for the deficiency if this

court finds that Zazzaro is a county employee. The plaintiff endorses the result reached by the trial court, but urges that in any event justice requires that one or more of the defendants be ordered to pay him the money to which every one agrees he is entitled.

The county is an agency of the State to administer state power and authority. *Bergen County v. Port of New York Authority*, 32 *N. J.* 303, 312 (1960). One of the county's principal roles is to help provide for the operation of the state judicial system within its borders. Accordingly, the taxpayers of the county bear a proper share of the cost of administering the judicial system within the county. The allocation of expenses to be paid by the taxpayers of the whole State and those to be paid by taxpayers of a county is a matter for legislative decision.

The Probation Department in each county operates as an enforcement arm of the state judicial system. The establishment and operation of this department in each county is regulated by *N. J. S.* 2A:168–1 to 13. By *N. J. S.* 2A:168–1, 3, 11 and 13 it is charged with implementing probation orders of the courts within the county; making such investigations as these courts may order concerning persons involved in proceedings before them; and collecting and disbursing moneys as these courts may order. For the most part, because of venue limitations, *R. R.* 3:6–1 and *R. R.* 6:3–1, the persons thus affected by the Probation Department are residents of the particular county in which the department is located. Moreover, most of the fines imposed by the courts are paid over to either the county or municipalities within the county. See *N. J. S.* 2A:7–13, 2A:166–10, and 2A:169–9; see also *City of Passaic v. Passaic County*, 54 *N. J. Super.* 254 (*App. Div.* 1959). And in most instances, support and alimony payments are collected for the benefit of residents of the county. The primary purpose of the Probation Department was set forth in *The Report of the Juvenile and Probation Study Commission* (February 17, 1928), which led to the adoption

by the Legislature of *P. L.* 1929, *c.* 156. That statute in substance is now *N. J. S.* 2A:168–1 to 13. The report said at *p.* 10:

"By placing them [convicted persons] under the supervision of a trained probation officer who will help them adjust their relations to their *own communities* and establish the contacts that will make a better living for themselves and their families, they may be turned aside from a career of crime, and the best that is in them in the way of personality and character may be brought to the surface. As producers *in the community* they become an asset rather than a liability to be supported at public expense and as such a continuing menace to the society generally." (Emphasis added)

Thus while the Probation Department in each county is established for the good of the whole State, it can be said to exist primarily for the benefit of the local residents. Apparently, with this in mind, the Legislature made each county responsible for meeting the expenses incurred in the operation of its Probation Department. *N. J. S.* 2A:168–8. Therefore, at least as far as monetary support is concerned, the Probation Department is a county subdivision.

The chief probation officer and subordinate probation officers are appointed by the judges of the County Court, *N. J. S.* 2A:168–5.* This court is part of the state judiciary. *N. J. Const.* (1947), *Art.* VI, *sec.* I, *par.* 1. Hence these appointees are viewed as being in the state service insofar as appointment is concerned. See *Pierson v. O'Connor,* 54 *N. J. L.* 36 (*Sup. Ct.* 1891). Since employees of the Probation Department are appointed by the chief probation officer, *N. J. S.* 2A:168–7, they, like him, are viewed as being in the state service for the purpose of appointment. The salaries of the chief probation officer and probation officers are fixed by the appointing judges and cannot be altered by the county, but before any order

---

* The statute also provides that before the court appoints additional probation officers the board of freeholders shall be given an opportunity to be heard as to the necessity of such officers.

fixing such salaries is made, notice "shall be given to the board of chosen freeholders of the county and such board shall be given an opportunity to be heard upon the same * * *" *N. J. S.* 2A:168–8. Thus probation officers are treated as state officers for the purpose of having their salaries fixed. However, *N. J. S.* 2A:168–8 further provides "The amounts so fixed shall be paid in equal semi-monthly payments in the same manner as the salaries of *other* officers of the county." (Emphasis added.) Thus for payroll purposes the chief probation officer and probation officers are treated as county officers. The amount of money expended to pay other employees of the Probation Department is subject to the budgetary limitations established by the county. *N. J. S.* 2A:168–7. The salaries of such employees are fixed by the county in accordance with "the schedules of the civil service commission, and paid in the same manner as the salaries of probation officers." *N. J. S.* 2A:168–8. Thus for payroll purposes the employees of the Probation Department are treated in the same manner as county employees.

From the foregoing it is clear that probation officers and employees of the Probation Department cannot be specifically identified as county or state agents. Therefore, the label attached to individuals is of no help in solving the present issue. Hence, this case cannot turn upon whether officers and employees of the Probation Department are "state" or "county" agents. The issue framed is whether the Legislature intended the State or the county to be chargeable with the losses caused by embezzlements of such agents.

*N. J. S.* 2A:168–10 provides in pertinent part:

"Each probation officer or employee who collects or has the custody of money shall execute a bond in a penal sum, to be fixed by the judges, with sufficient sureties approved by them, conditioned for the honest accounting of all money received by him as probation officer. The accounts of all probation officers shall be subject to audit *at any time by the board of chosen freeholders.*" (Emphasis added)

The above statute authorizes the County Board of Free-holders to investigate the accounts of the officers and employees of the Probation Department whenever it desires. Any audit conducted under the above statutory authorization is in addition to the annual audit of the Probation Department's accounts which the county must conduct after the close of its fiscal year. *N. J. S. A.* 40:4–1.

We believe that the key to the intent of the Legislature is found in *N. J. S.* 2A:168–10, quoted above. This section requires that each probation officer and employee execute an "honest accounting" bond. The premium for such bond is paid by the county as a necessary expense of the Probation Department. If the Legislature intended the county's obligation to end when the county paid the premium, there would have been no reason for the additional language in *N. J. S.* 2A:168–10 giving the county broad investigatory auditing power. We believe that grant of power was part of a legislative design to place in the county the commensurate responsibility for safeguarding the funds of the Probation Department. In other words, the statute evinces the legislative intent that the county, not the State, shall be the watchdog over the fiscal affairs of the County Probation Department. The county is on the scene. The department operates primarily for the benefit of people within the county. The county is charged with meeting the routine financial needs of the department and can investigate, as often as it likes, the fiscal behavior of that department. The Legislature in no way interjected the State in this monetary plan. We think the legislative design in probation department affairs, as manifested by the statute, is to funnel responsibility to the county not only in regard to securing a bond but also as to all matters relating to the misappropriation of funds by officers and employees of the Probation Department.

In the present case the Board of Freeholders purchased the surety bonds and named itself obligee. It collected on the bonds and paid the money over to the Proba-

tion Department. The State and Kervick, its Treasurer, never received this money and had no control over the handling of funds of the Probation Department. Therefore, the trial court erred by implicating them even under the facts as they appeared when the case was originally tried. Since we have found that, as between the State and the county, the county is responsible for the defalcations of Probation Department employees, Essex County is liable for making good all losses resulting from Zazzaro's embezzlement. Accordingly, we hold that the Essex County Board of Freeholders, Harry Lerner, Treasurer of Essex County, and Thomas F. McGann, Chief Probation Officer of Essex County, are responsible for paying to the plaintiff the sum of $1,150 due him. We further hold that the State of New Jersey and John A. Kervick, Treasurer of the State, are absolved from any responsibility in this matter.

In view of the above we will not consider the merits of the State's defense of sovereign immunity.

The judgment of the trial court is vacated and judgment will be entered directing the Essex County Board of Freeholders, Harry Lerner, Treasurer of Essex County, and Thomas F. McGann, Chief Probation Officer of Essex County, to pay the plaintiff, George Godfrey, the sum of $1,150.

*For modification*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.