87 N.J. Super. 276 (1965)
209 A.2d 150
FRANCIS X. MAUK, HOWARD W. BRUNER AND EUGENE R. SHEPPARD, PLAINTIFFS,
v.
JOSEPH J. HOFFMAN, COUNTY CLERK OF GLOUCESTER COUNTY; HORACE S. MAHLEY, DIRECTOR OF THE BOARD OF CHOSEN FREEHOLDERS OF GLOUCESTER COUNTY; GEORGE G. FRABRIZO, TOWNSHIP CLERK OF FRANKLIN TOWNSHIP; ARMAN SCHNETZLER, BOROUGH CLERK OF THE BOROUGH OF GLASSBORO; RUDOLPH L. MARCUCCI, TOWNSHIP CLERK OF GREENWICH TOWNSHIP; CHARLES H. KIRBY, TOWNSHIP CLERK OF SOUTH HARRISON; CATHERINE H. ROBERTS, TOWNSHIP CLERK OF WASHINGTON TOWNSHIP; AND ALEX C. CARSON, CITY CLERK OF THE CITY OF WOODBURY, DEFENDANTS. MARVIN M. WODLINGER, A CITIZEN, TAXPAYER AND VOTER IN THE CITY OF MILLVILLE, COUNTY OF CUMBERLAND, STATE OF NEW JERSEY, PLAINTIFF,
v.
EDGAR HAND, INDIVIDUALLY, AND AS DIRECTOR OF THE CUMBERLAND COUNTY BOARD OF CHOSEN FREEHOLDERS, AND EARL WESCOAT, COUNTY CLERK OF THE COUNTY OF CUMBERLAND, STATE OF NEW JERSEY, DEFENDANTS, AND COUNTY OF SALEM, DEFENDANT-INTERVENOR.
Superior Court of New Jersey, Chancery Division.
Decided April 8, 1965.
*278 Mr. John W. Trimble for plaintiffs Francis X. Mauk, Howard W. Bruner and Eugene R. Sheppard.
Mr. Laurence L. Crispin for defendants Joseph J. Hoffman, County Clerk of Gloucester County, and Horace S. Mahley, Director of the Board of Chosen Freeholders of Gloucester County.
*279 Mr. Leonard H. Kaser for defendant George G. Frabrizo, Township Clerk of Franklin Township.
Mr. Martin F. Caulfield for defendant Arman Schnetzler, Borough Clerk of the Borough of Glassboro (Messrs. Ware, Caulfield, Zamal & Cunard, attorneys).
Mr. Albert J. Zamal for defendant Rudolph L. Marcucci, Township Clerk of Greenwich Township (Messrs. Ware, Caulfield, Zamal & Cunard, attorneys).
Mr. Fred A. Gravino for defendant Charles H. Kirby, Township Clerk of South Harrison.
Mr. Joseph H. Enos for defendant Catherine H. Roberts, Township Clerk of Washington Township.
Mr. Robert E. Boakes for defendant Alex C. Carson, City Clerk of the City of Woodbury (Messrs. Boakes, Lindsay & Smith, attorneys).
Mr. Marvin M. Wodlinger, pro se.
Mr. Bertram R.B. Aitken for defendants Edgar Hand, individually and as Director of the Cumberland County Board of Chosen Freeholders, and Earl Wescoat, County Clerk of the County of Cumberland (Messrs. David L. Horuvitz and Philip L. Lipman, of counsel).
Mr. George S. Friedman for defendant intervenor, County of Salem (Messrs. Friedman & Telsey, attorneys).
WICK, J.S.C.
These matters have come before the court upon motions for summary judgment to declare Title 40, chapter 20, article 3 of the New Jersey Revised Statutes unconstitutional on the ground that the said statutes are violative of the equal protection clause of the Fourteenth Amendment *280 of the United States Constitution. The "one man-one vote" principle laid down in Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), is now sought to be applied to the County Boards of Chosen Freeholders of Gloucester and Cumberland Counties. Counsel for the County of Salem has made a motion to intervene in the Cumberland County suit, which motion is hereby granted.
There being no genuine issue of material fact in these cases, these matters are properly before this court for summary judgment under R.R. 4:58.
The three counties involved in these suits are all counties of the third class and each is governed by a large board of freeholders. Plaintiffs contend that a large board of freeholders is unconstitutional and that this case is controlled by the recent decisions in Jackman v. Bodine, 43 N.J. 453 (1964); Reynolds v. Sims, supra; WMCA, Inc. v. Lomenzo, 377 U.S. 633, 84 S.Ct. 1418, 12 L.Ed.2d 568 (1964); Maryland Committee for Fair Representation v. Tawes, 377 U.S. 656, 84 S.Ct. 1429, 12 L.Ed.2d 595 (1964); Davis v. Mann, 377 U.S. 678, 84 S.Ct. 1441, 12 L.Ed.2d 609 (1964); Roman v. Sincock, 377 U.S. 695, 84 S.Ct. 1449, 12 L.Ed.2d 620 (1964); and Lucas v. Forty-Fourth General Assembly of Colorado, 377 U.S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632 (1964).
In view of these decisions, this court is of the opinion that the boards of freeholders of these three counties are clearly malapportioned and that the afore-mentioned statutes of New Jersey are unconstitutional. It could not seriously be contended otherwise.
In DeFeo v. Smith, 31 N.J. Super. 474 (Law Div. 1954), reversed on other grounds 17 N.J. 183 (1955), the court stated:
"* * * The county board of chosen freeholders is the legislature of the county. It exercises the corporate powers of the county and has the management and control of county property and its financial interests. * * *" (at p. 478)
*281 Since the basic principle of representative government, as stated in the Reynolds case, supra, is that the weight of a citizen's vote cannot depend on where he lives, the composition of the boards of freeholders should comply with the Fourteenth Amendment. A county is generally considered a political subdivision or agency of the State. Township of North Bergen v. Usher, 142 N.J. Eq. 479 (Ch. 1948); Bergen County v. Port of New York Authority, 32 N.J. 303 (1960); Godfrey v. McGann, 37 N.J. 28 (1962). Among its powers are the power to tax, R.S. 40:23-7; the power to appropriate, N.J.S.A. 40A:4-10, and the power to penalize for violations of its resolutions, R.S. 40:24-2. If the State Legislature must conform to the principle of equal protection, it is logical that the "county legislature" should conform to the same principle.
It has been urged that the State of New Jersey is an indispensable party to these proceedings under R.R. 4:37-2, which reads in part:
"When the validity of a statute, executive order, franchise or constitutional provision of this State is drawn in question in any action to which the State or an officer or agency thereof is not a party, the court shall require notice to be given the Attorney General of the State; and the State shall upon timely application be permitted to intervene in the action. * * *"
In view of the fact that (1) in each case the county clerks and the directors of each board, in their elected positions, have been made parties defendant and are here represented by counsel; (2) I am advised that the Attorney General, though not served with process, is cognizant of the actions, and (3) the statement of Governor Hughes in refusing to sign Senate Bill No. 60 indicates that he, too, is fully aware of the pendency of these suits, the court does not deem the failure to name the Attorney General as a party defendant a fatal defect or one which should delay the court in deciding these matters. However, to take a cautious approach, I am directing on my own motion that the Attorney General representing the State be a party to the judgment.
*282 That the boards of freeholders of these three counties cannot remain as presently constituted seems abundantly clear. Probably none of the defendants will dispute this. But as aptly pointed out, there remains a most difficult and disturbing part of this action. What should be done, how should it be done, who should do it, and when?
The plaintiffs in both actions urge that the remedy that should be afforded is for this court, at this time, to order that forthcoming elections to the respective boards of chosen freeholders be held under Title 40, chapter 20, article 2 of the New Jersey Revised Statutes providing for a small board of freeholders to be elected at large. But these plaintiffs have ignored the mandate of the very statutes they rely upon. This court agrees that the plan for a small board of freeholders elected at large is clearly constitutional; however the statute, R.S. 40:20-28, provides:

"Referendum; submission to voters

Except as hereinafter provided the provisions of sections 40:20-20 to 40:20-35 of this title shall be inoperative in any county until adopted by the legal voters thereof at a general election."
The procedure to be followed to select a small board of freeholders is to file a petition with the county clerk, signed by 10% of the qualified voters, as evidenced by the total number of votes cast in the county at the next preceding general election (R.S. 40:20-29), and, having satisfied this requirement, the question is submitted to the voters at a general election, as provided above in R.S. 40:20-28. As to time of filing, notice of election, form and content of ballot, conduct of election and vote required for adoption, see R.S. 40:20-30 to 33.
The residents of Gloucester County, Cumberland County and Salem County have had the power to select small boards of freeholders for over 50 years. The New Jersey Legislature made provision for the present alternative form of county government in 1912 (L. 1912, c. 355). Since the citizens of these communities have not acted in all this time, *283 this court must presume that they desire to retain their large boards of freeholders. For this court to order a county to change its form of government deprives the citizens thereof of the right to select their own form. This seems a more serious deprivation of rights than the denial of the right of equal representation. Under any circumstances, this court is of the opinion that it cannot order a county to be hereafter governed by a small board of freeholders merely because its present large board of freeholders is malapportioned.
Plaintiffs contend that the fact that a practicable political remedy to obtain relief exists  a referendum for a small board of freeholders  is of no significance. To support this contention they cite Jackman v. Bodine and Lucas v. Forty-Fourth General Assembly of Colorado, supra. However, the United States Supreme Court noted in the Lucas case:
"* * * While a court sitting as a court of equity might be justified in temporarily refraining from the issuance of injunctive relief in an apportionment case in order to allow for resort to an available political remedy, such as initiative and referendum, individual constitutional rights cannot be deprived, or denied judicial effectuation, because of the existence of a non-judicial remedy through which relief against the alleged malapportionment, which the individual voters seek, might be achieved. An individual's constitutionally protected right to cast an equally weighted vote cannot be denied even by a vote of a majority of a State's electorate, if the apportionment scheme adopted by the voters fails to measure up to the requirements of the Equal Protection Clause. * * *" (377 U.S., at p. 736, 84 S.Ct., at p. 1473, 12 L.Ed.2d, at p. 647)
Therefore, while this court recognizes that judicial relief may not be arbitrarily denied, it also recognizes that as a court of equity it has the right to refrain temporarily from issuing injunctive relief in order to allow resort to available political remedies.
It is the decision of this court that before it will take any action on its own, the citizens of the three counties concerned herein shall have time to determine either that they shall hereafter be governed by small boards of freeholders, or to petition, through their state representatives (their respective *284 Senators and Assemblymen) to have the Legislature reapportion their large boards of freeholders.
In order to implement this decision, the court does not feel that the forthcoming elections to the respective boards of freeholders should be enjoined. The New Jersey Supreme Court stated in Jackman v. Bodine:
"We think it clear from Reynolds v. Sims that further elections to the Legislature cannot be held upon the existing constitutional plan. It follows that there must be a reapportionment in time for a general election of all legislators in November 1965. * * *" (43 N.J., at p. 474)
This position was reaffirmed in the recent decision of our Supreme Court in the same case, 44 N.J. 312 (decided March 31, 1965), when application was made for modification of the judgment. However, the Supreme Court made it quite clear that the above conclusion was found to be required by the views expressed in Reynolds v. Sims:
"* * * It is enough to say now that, once a State's legislative apportionment scheme has been found to be unconstitutional, it would be the unusual case in which a court would be justified in not taking appropriate action to insure that no further elections are conducted under the invalid plan. However, under certain circumstances, such as where an impending election is imminent and a State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief in a legislative apportionment case, even though the existing apportionment scheme was found invalid. In awarding or withholding immediate relief, a court is entitled to and should consider the proximity of a forthcoming election and the mechanics and complexities of state election laws, and should act and rely upon general equitable principles. With respect to the timing of relief, a court can reasonably endeavor to avoid a disruption of the election process which might result from requiring precipitate changes that could make unreasonable or embarrassing demands on a State in adjusting to the requirements of the court's decree. * * *" (377 U.S., at p. 585, 84 S.Ct., at pp. 1393-4, 12 L.Ed.2d, at p. 541)
Keeping in mind that (1) this court has decided that the citizens of the three counties should be given an opportunity to resort to available political remedies; (2) the State Legislature, *285 to whom these citizens must petition to have their large boards of freeholders reapportioned, is presently in a great state of flux because of its own need to reapportion, and (3) petitions nominating candidates must be filed 40 days prior to the day of the holding of the primary election for the general election (N.J.S.A. 19:23-14), which date is April 22, 1965, the State Legislature having amended N.J.S.A. 19:2-1 (see L. 1965, c. 4, § 1) to establish the date of the primary as the first Tuesday in June, i.e., June 1, 1965; this court is of the opinion that it is presently confronted by just such an unusual case as the United States Supreme Court contemplated would justify a further election under the existing scheme.
However, it must be made clear that none of the present freeholders whose terms extend beyond January 1, 1966, nor those to be elected this fall, may hold office past the time of the first election under any new plan to be devised and duly adopted by the Legislature and approved by the Governor into law, or by adoption through referendum of the laws relating to a small board of freeholders. In other words, from this time on each of the respective boards is a de facto board, empowered to act but not to continue indefinitely.
Recognizing the problems and procedures involved with the election of members to any board of freeholders, be it large or small, and that the primary election of 1966 is to be held on April 19, 1966 (N.J.S.A. 19:2-1),[1] the filing of petitions 40 days prior thereto, which date is March 10, 1966 (N.J.S.A. 19:23-14), and further recognizing the problem of trying to solve the reapportionment tangle within each county *286 by the meetings of serious-minded men to evolve a plan acceptable to all segments of each county, and one which can attract the support of the remaining members of each house of the Legislature and finally the approval of the Governor, this court will retain jurisdiction to await political solution of the matter. However, in the event no political solution is forthcoming either by referendum on a small board or passage of a proper reapportionment law affecting these counties, the court will hear argument on February 21, 1966[2] for appropriate additional relief.
Judgment will be entered in accordance with these conclusions.
NOTES
[1] This opinion has assumed that the Legislature will amend N.J.S.A. 19:2-1 again after the forthcoming primary election to re-establish the third Tuesday in April as the date for the primary election. This assumption is based on the legislative statement that the purpose of the present change was just to allow the Legislature sufficient time to consider and adopt an apportionment plan for itself. If the Legislature fails to repeal L. 1965, c. 4, § 1, the date of the primary election will be June 7, 1966, with the filing of petitions required by April 28, 1966.
[2] If the Legislature fails to repeal L. 1965, c. 4, § 1, the date for argument shall be April 11, 1966.