93 N.J. Super. 31 (1966)
224 A.2d 519
NEW JERSEY STATE AFL-CIO, AN UNINCORPORATED ASSOCIATION, VINCENT J. MURPHY, ET AL., PLAINTIFFS,
v.
STATE FEDERATION OF DISTRICT BOARDS OF EDUCATION OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided November 10, 1966.
*34 Mr. Thomas L. Parsonnet for plaintiffs (Messrs. Parsonnet & Parsonnet, attorneys).
Mr. Thomas P. Cook, attorney, for defendant.
MINTZ, J.S.C.
Plaintiffs seek an adjudication that N.J.S.A. 18:9-1 et seq., the legislation creating the State Federation of District Boards of Education (State Federation) and prescribing its functions, is unconstitutional. Alternatively, they urge that if the legislation is constitutional, the State Federation be enjoined from engaging in activities deemed ultra vires. Defendant has moved for summary judgment. Although plaintiffs filed no such cross-motion, it was stipulated that the matter be considered before the court as on cross-motions for summary judgment. The parties agree that there are no factual issues.
The State Federation is a creature of the Legislature, N.J.S.A. 18:9-1 et seq. Pursuant to N.J.S.A. 18:9-2 each district board of education selects annually one of its members as a delegate to the State Federation. N.J.S.A. 18:9-3 provides that the State Federation
"* * * may investigate such subjects relating to education in its various branches as it may think proper, and it shall encourage and aid all movements for the improvement of the educational affairs of this state." (Emphasis supplied)

I
Plaintiffs contend that the statute is unconstitutional as being violative of the due process and equal protection clauses of the Fourteenth Amendment of the United States Constitution. It is urged that the organization of the State Federation violates the one man-one vote principle enunciated in *35 Reynolds v. Sims, 377 U.S. 533, 537, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), and in Jackman v. Bodine, 43 N.J. 453 (1964). Plaintiffs argue that since each district board of education is entitled to only one delegate to the State Federation, the citizens of the larger municipalities are being deprived of equal protection of the laws since the voice of the delegates from smaller communities is equal to that of the delegates from the larger communities.
Although plaintiffs' standing to sue was not raised as an issue in this case, the court notes that they lack such standing. The decision in Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), to the effect that members of the electorate have standing to challenge the constitutionality of legislative apportionment, is not apposite in the instant case, basically for two reasons. Firstly, the court in Baker was concerned with the apportionment of a legislative body and specifically held, inter alia, that a voter in a more populated voting district had standing to challenge legislation malapportioning the state legislature since his vote was diluted, thereby denying him equal protection of the laws. As hereinafter observed, the instant case does not at all concern the apportionment of a legislative body.
Secondly, the court in Baker determined that plaintiffs had suffered a direct and substantial harm. Such a finding is absent in the present case. It is axiomatic that one who challenges the constitutional validity of a statute must suffer or be threatened with direct and substantial injury as a consequence of the enforcement of the statute. Van Itallie v. Borough of Franklin Lakes, 28 N.J. 258 (1958); Koons v. Board of Comm'rs of Atlantic City, 134 N.J.L. 329, 338 (Sup. Ct. 1946), affirmed 135 N.J.L. 204 (E. & A. 1947); Bd. of Education of Mountain Lakes v. Maas, 56 N.J. Super. 245 (App. Div. 1959), affirmed 31 N.J. 537 (1960), certiorari denied 363 U.S. 843, 80 S.Ct. 1613, 4 L.Ed.2d 1727 (1960). The individual plaintiffs' basis of direct and substantial harm lies in the allegation in his complaint that he is a New Jersey taxpayer residing in the City of Newark. The *36 contention is that since the State Federation is supported by public tax moneys, said moneys being derived from annual dues which defendant has the power to assess upon all of the district boards of education, the individual plaintiffs are harmed by the purported unconstitutional composition of the State Federation. Plaintiffs' theory is untenable. Reference is made to the decision in Doremus v. Board of Education, 342 U.S. 429, 72 S.Ct. 394, 96 L.Ed. 475 (1952). There plaintiffs were taxpayers seeking to invalidate, as a violation of the First Amendment, a New Jersey statute which provided for Bible reading in public schools. They urged that they had standing because of their status as taxpayers, alleging that the schools were maintained by public funds. The United States Supreme Court decided that plaintiffs' status as taxpayers was not sufficient to give them standing to sue. The court stated:
"* * * There is no allegation that this activity is supported by any separate tax or paid from any particular appropriation or that it adds any sum whatever to the cost of conducting the school. No information is given as to what kind of taxes are paid by appellants and there is no averment that Bible reading increases any tax they do pay, or that as taxpayers they are, will or probably can be out of pocket because of it.

* * * * * * * *
The taxpayer's action can meet this test, but only when it is a good-faith pocketbook action. It is apparent that the grievance which it is sought to litigate here is not a direct dollars and cents injury, but is a religious difference. If the appellants established the requisite special injury necessary to a taxpayer's case or controversy, it would not matter that their dominant inducement to action was more religious than mercenary. It is not a question of motivation, but of possession of the requisite financial interest that is, or is threatened to be, injured by the unconstitutional conduct. * * *" (at p. 433, 72 S.Ct., at pp. 397-398.
Like Doremus, there is no allegation that the purported unconstitutional composition of the State Federation or its alleged ultra vires activities are supported by any separate tax or paid from any particular appropriation. There is also no averment that the alleged unconstitutional composition of *37 defendant increases any tax paid by plaintiffs, or that plaintiffs will or could be out of pocket because of it.
Plaintiffs' action is not basically a pocketbook action alleging a dollars and cents injury. They are not attacking defendant's power to assess dues. Rather, the gravamen of the constitutional argument is predicated upon the composition of the State Federation. In order to have standing upon such a complaint, a plaintiff must be a voter whose representation in a legislative body is other than proportional, Baker v. Carr and Reynolds v. Simms, supra. I do not find that prerequisite in the instant case. The State Federation, aside from not being a legislative body, does not purport to act as the representative of the electorate. Rather, it stands as the representative of education in its various facets, and also as the representative of the agencies which are concerned with the improvement of educational affairs of this State. As such, the individual plaintiffs have no standing to assert denial of equal protection, for it is not their individual interests which are being represented by defendant. See also Fuller v. Volk, 351 F.2d 323 (3 Cir. 1965), rehearing 250 F. Supp. 81 (D.N.J. 1966); Ahto v. Weaver, 39 N.J. 418 (1963).
There is additional basis for concluding that plaintiff labor union also lacks standing to challenge the constitutionality of the cited statute. The Fourteenth Amendment provides that a state may not deny to any person within the jurisdiction the equal protection of the laws. Though this clause has been interpreted to include private corporations within the ambit of "persons" protected Grosjean v. American Press Co., 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660 (1936); Louis K. Liggett Co. v. Lee, 288 U.S. 517, 53, S.Ct. 481, 77 L.Ed. 929, 85 A.L.R. 699 (1933), there has been no determination positing an unincorporated association, such as a labor union, as within the classification of "persons" entitled to such constitutional protection. The Federal District Court in Nebraska has specifically held that the AFL-CIO has no standing to assert denial of equal *38 protection and thereby challenge the apportionment of the state legislature. Only a citizen who is a legal voter in a legislative district and whose rights are impinged by the failure to reapportion can maintain such an action. League of Nebraska Municipalities v. Marsh, 209 F. Supp. 189 (D.C. Neb. 1962).
Since defendant did not urge plaintiffs' lack of standing, this court will decide the substantive issues raised on the cross-motions. Plaintiffs' contentions of unconstitutionality of N.J.S.A. 18:19-1 et seq. are unsustainable. Plaintiffs rely upon Reynolds v. Simms and Jackman v. Bodine, supra; Mauk v. Hoffman, 87 N.J. Super. 276 (App. Div. 1965), and other related cases. The concern of the respective courts in those decisions was the integrity of the citizens' vote in determining who would perform governmental functions on both the state and local levels. The one man-one vote principle, as specifically designated in Reynolds v. Sims, supra, has applicability only to voting by individuals at elections of public officials or on propositions submitted to referendum. The instant case does not present a situation where the voting rights of the citizens are being diluted by unequal representation in public government.
As already observed, the State Federation is not a legislative body. It purports to aid all movements for the improvement of the educational affairs in this State. Among its varied activities it sponsors or opposes legislation dealing with the broad subject of education. The State Federation relies primarily upon its Legislative Bulletin to disseminate its views. Though it attempts to influence legislation, it in no way enacts regulations binding upon the electorate or district boards of education, nor does it act as a representative of the electorate. The rationale of the Reynolds, Jackman and Mauk cases is therefore inapplicable to the State Federation.
Plaintiffs assert that the State Federation has the power to tax since it collects dues, and it is argued that the power to tax is a legislative function. This assertion is without merit. N.J.S.A. 18:9-6 provides that
*39 "For the purpose of defraying the necessary expenses of the State Federation, the various district boards * * * may appropriate annually such sums for dues as may be assessed by the federation at any delegate's meeting, which assessment of dues shall be made only upon 2/3 vote of the delegates present * * * The aforesaid dues shall be assessed upon a graduated scale according to the size of the school district, but in no case shall the dues for any 1 district exceed the sum of $300.00 for any 1 year. * * *"
It is this statutory enactment which plaintiff asserts makes the State Federation a legislative body. In determining otherwise, it must be remembered that the State Federation derives its powers from the Legislature. It was the latter that promulgated the revenue measure. In enabling the State Federation to defray necessary expenditures by assessing annual dues, the Legislature was careful to establish a definite standard and basis for assessment and to set a maximum amount. The State Federation was not vested with an autonomous taxing power, but merely was delegated authority by the Legislature to defray necessary expenses by assessing dues upon district boards of education according to a legislatively determined standard. Additionally, it may be argued that when the State Federation imposes an assessment for dues, it is not levying a tax but rather disbursing funds raised by taxation. In any event, viewing the aggregate functions of the State Federation, it is difficult to regard it as a legislative body merely because it may possibly have the incidental power to exact revenues in the nature of dues.
In Reynolds v. Sims, supra, 377 U.S., at p. 568, 84 S.Ct., at p. 1385, the court, in asserting the one man-one vote principle, concluded:
"We hold that as a basic constitutional standard, the Equal Protection Clause requires that the seats in both houses of a bicameral state legislature must be apportioned on a population basis. Simply stated, an individual's right to vote for state legislators is unconstitutionally impaired when its weight is in a substantial fashion diluted when compared with votes of citizens living in other parts of the State. * * *"
*40 In the Reynolds, Jackman and Mauk cases the courts were concerned essentially with insuring a representative form of government. These decisions make it clear that a government which has the power to enact legislation directly affecting its constituents should be apportioned on a proportional basis. The concern of the courts was not with organizations which do not represent the electorate as their chosen ruling body and which do not enact legislation directly affecting their constituents. Consequently, the fact that the State Federation has the incidental power to assess dues, which power may in some remote sense resemble the power to tax, should not bring it within the concept of the aforementioned decisions.
It is settled law that when a statute is capable of two constructions, one of which would render it unconstitutional and the other valid, a construction favoring validity should be adopted. Ahto v. Weaver, 39 N.J. 418 (1963). There is a strong presumption of constitutionality. Reingold v. Harper, 6 N.J. 182 (1951). A legislative act will not be declared void unless its repugnancy to the Constitution is clear beyond a reasonable doubt. Harvey v. Essex County Board of Freeholders, 30 N.J. 381, 388 (1959). As observed in New Jersey Restaurant Association v. Holderman, 24 N.J. 295 (1957):
"The burden of demonstrating that a statute contravenes the equal protection clause is extremely formidable, as is attested by the long trail of failure. In addition to the strong presumption of constitutionality with which all organic challenges are approached, one who assails a statute on this ground must contend with principles of unusual elasticity. * * *" (at p. 300)
See also American Budget Corp. v. Furman, 67 N.J. Super. 134 (Ch. Div. 1961), affirmed 36 N.J. 129 (1961); State v. Cannarozzi, 77 N.J. Super. 236 (App. Div. 1962). Clearly, plaintiff has failed to rebut the strong presumption of constitutionality. The statute is therefore declared constitutional in every respect.

*41 II
Plaintiffs also seek to enjoin defendant from lobbying activities pertaining to legislation allegedly unrelated to the subject of education, and therefore beyond the statutory authority. They refer to legislative bills which defendant has either supported or sought to stymie. Included are the proposed State Labor Relations Act, a proposed "Little Walsh-Healy Act," the so-called Prevailing Wage Law, a bill requiring that contractors for public construction be prequalified, a bill to raise revenue by means of a lottery, a bill requiring the granting of separate contracts to five separate construction trades, and a proposed minimum wage law for private employees of private employers. Plaintiffs ask the court to determine that these measures are unrelated to the field of education and that defendant be enjoined from committing future ultra vires activities.
As indicated earlier, N.J.S.A. 18:9-3 bestows broad discretionary powers upon defendant by enabling it to "investigate such subjects relating to education in its various branches as it may think proper." (Emphasis supplied) Defendant is empowered to act not only with regard to the academic phases of education, but rather is concerned with education in its various branches. To this extent, the State Federation may, in its discretion, concern itself with pending legislation as "it" deems proper.
Equity, generally, will not enjoin the discretionary functions of public or quasi-public officials. As indicated in 43 C.J.S. Injunctions § 112, p. 638:
"As long as school boards or officers act within the limits of the powers conferred on them, their discretion cannot be interfered with by injunction unless their action is so clearly unreasonable as to amount to an oppressive and manifest abuse of discretion; and the general rule applies although the discretion may not be wisely exercised."
The court is cognizant of the expertise of the State Federation in the field of education and thus is reluctant to substitute *42 its judgment for that of defendant by enjoining it from acting on particular bills in the absence of a manifest abuse of discretion. Certainly, the sphere of education extends beyond academic interests and encompasses proper school facilities and the means for construction of those facilities. The State Federation apparently opposed a lottery bill and favored a broad-base tax as a means of raising revenue for educational purposes. It may properly be concerned with revenue measures, the proceeds of which will be used for educational purposes. It is in the interest of education to have the best facilities at the least cost. Therefore, legislation affecting the wage rates of workers who will construct schools, and legislation providing for multiple contracts with the respective trades as opposed to a single general contract, are of concern to the defendant. In brief, defendant may investigate and encourage the enactment or rejection of proposed legislation dealing in any subject relating to educational affairs in this State, and this power is not limited to the educational process but includes all matters in any way affecting that subject. However, defendant's opposition to a bill which involved civil service employees in state service was an ultra vires activity. Defendant admits that it overlooked the fact that said bill was limited to employees in the state service and does not involve either directly or indirectly educational interests. Its counsel also stated that this unintentional error on the part of the State Federation is not likely to be repeated.
The great care which a court of equity should exercise in the granting of injunctive relief, an extraordinary remedy, has been reiterated in numerous cases. See e.g., New Jersey State Bar Ass'n v. Northern New Jersey Mortgage Associates, 22 N.J. 184, 194 (1956); Trisolini v. Meltsner, 23 N.J. Super. 204, 208 (App. Div. 1952); Devine v. Devine, 20 N.J. Super. 522, 528 (Ch. Div. 1952); Light v. National Dyeing and Printing Co., 140 N.J. Eq. 506, 510 (Ch. 1947). To authorize an injunction, the court must be reasonably satisfied that the threatened harm is likely to be committed and that defendant intends to perpetrate the act *43 sought to be enjoined, or that the act probably will be done unless the court prevents it. Irvington Varnish & Insulator Co. v. Van Norde, 137 N.J. Eq. 134 (Ch. 1945), reversed on other grounds 138 N.J. Eq. 99 (E. & A. 1946). An injunction will not issue to prohibit the doing of acts already done, and merely to allay a plaintiff's fears or apprehensions, where there is nothing to show that the wrongs complained of are likely to be continued unless restrained. Weiss v. Levine, 133 N.J. Eq. 441 (Ch. 1943); Scott v. Cholmondeley, 129 N.J. Eq. 152 (Ch. 1941); cf. Sheahan v. Upper Greenwood Lake Property Owners Ass'n, 36 N.J. Super. 133 (App. Div. 1955).
The interests of education are sufficiently broad so as to probably encompass the bills which plaintiffs contend are beyond the lobbying authority of the State Federation. At any rate, in the absence of a manifest abuse of discretion the court will not substitute its judgment for that of defendant.
Plaintiffs' proofs do not make out a case for injunctive relief. Accordingly, summary judgment will be entered in favor of defendant. An appropriate form of judgment will be submitted, consented to as to form or to be settled on notice.