201 N.J. Super. 226 (1984)
492 A.2d 1100
BAPTIST HOME OF SOUTH JERSEY, PLAINTIFF,
v.
THE BOROUGH OF RIVERTON, THE ZONING BOARD OF ADJUSTMENT FOR THE BOROUGH OF RIVERTON, AND CLARENCE HUBBS, AS THE CONSTRUCTION CODE OFFICIAL OF THE BOROUGH OF RIVERTON, DEFENDANTS.
Superior Court of New Jersey, Law Division Burlington County.
Decided March 3, 1983.
Decided March 27, 1984.
*232 Frederick W. Hardt for plaintiff (Sever & Hardt, attorneys).
Walter L. Smith, Jr., for Zoning Board of Adjustment (Smith & Smith, attorneys).
Joseph S. Georgiana for Borough of Riverton (Capehart & Scatchard, attorneys).
Thomas Norman for Planning Board.
George H. Hulse for Intervenors (Hulse & Germano, attorneys).
Decided (First Opinion) March 3, 1983.
Decided (Second Opinion) March 27, 1984.
HAINES, A.J.S.C.
The Baptist Home, which provides for the care of elderly Baptists, is in Riverton, New Jersey. Its application for a zoning variance which would permit the expansion of its facility was denied by the Board of Adjustment. This prerogative writ action seeks a reversal of that denial; it also challenges the validity of the Borough's zoning ordinance. Individual residents have been allowed to intervene. The issues have been disposed of in two phases of the litigation. First, the validity of the Borough's zoning ordinance was considered. It was held to be void but the municipality was provided with an opportunity to adopt a new ordinance. This was done and the court then considered the variance question in the light of the new legislation, holding that the denial of the variance was arbitrary. The opinions supporting these decisions are set forth below. Each responds to a summary judgment motion.

*233 THE VALIDITY OF THE OLD ZONING ORDINANCE
Riverton Borough's governing body is also its planning board. It has adopted a zoning ordinance. This opinion holds that the governing body cannot be a planning board under our Municipal Land Use Law, that the existence of a separate planning board was necessary before the zoning ordinance could be adopted and that, as a consequence, the Borough's ordinance is void.
N.J.S.A. 40:55D-23a provides for the creation of a planning board and establishes its membership. N.J.S.A. 40:55D-62a permits the adoption of a zoning ordinance only after a planning board has adopted the Land Use Plan element of the master plan and, pursuant to N.J.S.A. 40:55D-64, after reference of the proposed ordinance to a planning board. Riverton's planning board is its governing body. This cannot be. The membership requirements of the statute must be met. Taxpayers Ass'n. of Weymouth Tp. v. Weymouth Tp., 80 N.J. 6, 20-21 (1976). The Riverton arrangement does not meet them. It is the clear intention of the Legislature that a planning board be an autonomous body. Lehrhaupt v. Flynn, 140 N.J. Super. 250, 268 (App.Div. 1976), aff'd 75 N.J. 459 (1978). The Riverton ordinance fails to recognize this fact. The ordinance emasculates appellate rights. Any interested party desiring to appeal the decision of the planning board to the governing body, as permitted by N.J.S.A. 40:55D-17, would not have independent review of appellate contentions as anticipated by the statute. An appeal from the governing body to the governing body makes no sense and surely was not intended by the Legislature.
A municipality is not required to adopt a zoning ordinance. N.J.S.A. 40:55D-62a provides that the "governing body may adopt or amend a zoning ordinance...." Under our former zoning statutes, the absence of a planning board did not affect the validity of a zoning ordinance. Angermeier v. Sea Girt, 27 N.J. 298 (1955). Submission of a proposed zoning *234 regulation to a planning board was required but only "when such board exist[ed]." N.J.S.A. 40:55-35. The Borough argues that the old arrangement remains a permissible one. It points to N.J.S.A. 40:55D-23a, which says that the "governing body may, by ordinance, create a planning board ...," contrasting this with N.J.S.A. 40:55D-69 which provides that the "governing body shall create, by ordinance, a zoning board of adjustment...." It also suggests that the elimination of the words "when such board exists" from N.J.S.A. 40:55D-64 (the present version of N.J.S.A. 40:55-35) is not significant. I disagree with the Borough's position.
It is necessary to read the Municipal Land Use Law in its entirety when construing the Legislature's intention with reference to any part thereof. Particular words of the statute should be read in the light of the statutory purpose. Sperry & Hutchinson Co. v. Margetts, 15 N.J. 203 (1954). The Municipal Land Use Law greatly increased the power of municipal planning boards, part of the legislative effort to strengthen planning procedures in municipalities and to make planning and zoning integrated undertakings. It is entirely clear that the Legislature intended to have planning boards play a substantial role in connection with the enactment of zoning ordinances. The land use element, perhaps the most significant underpinning for any zoning ordinance, must be adopted by a planning board and no zoning ordinance may be adopted which is inconsistent with these land use provisions unless the inconsistent provisions are adopted by the affirmative vote of the full authorized membership of the governing body with reasons for the adoption being set forth in the record. The planning board adopts the entire master plan for the community. It is the body authorized to grant subdivision approvals. The provision of N.J.S.A. 40:55D-23a that the governing body "may" create a planning board must be read in light of the fact that a municipality is not required to adopt zoning legislation, in which case it need not appoint a planning board. When a zoning ordinance is adopted, a planning board is a necessity. If this were not so, *235 the mandatory provision in the statute, requiring that an ordinance "shall" be adopted only after the planning board has adopted the land use element, N.J.S.A. 40:55D-62a, and the demand of N.J.S.A. 40:55D-64 that the governing body "shall" refer a proposed zoning ordinance to the planning board, would make no sense. These provisions make it entirely clear that, if a municipality wishes to adopt a zoning ordinance, it may do so only with the participation of a planning board, and therefore, a planning board must be created.
Riverton's governing body-cum-planning board was not an arrangement authorized by statute. As a consequence, Riverton's planning board did not exist in the eyes of the law. As a further consequence, its zoning ordinance was not adopted as required by law. It is therefore void.
It is unlikely that the Borough of Riverton wishes to be without a zoning ordinance. Accordingly, I will suspend the effect of my opinion for 90 days from the date of the execution of the order which reflects this opinion, during which time the Borough, at its discretion, may adopt a new zoning ordinance. The arrangement is permissible under Kruvant v. Mayor and Council, 82 N.J. 435 (1980).
The Baptist Home has requested an injunction to restrain the enactment of any municipal legislation which would prevent its proposed expansion, claiming that equitable considerations require this relief. It is the usual rule in connection with injunctions, however, that they will not issue to prevent threatened harm unless the court is satisfied that such harm is very likely to occur. New Jersey AFL-CIO v. St. Fed. of Dist. Bds. of Ed., 93 N.J. Super. 31 (Ch.Div. 1966). It is, of course, likely that the Borough will adopt a new zoning ordinance and that the new regulations will adversely affect the Home. However, in addition to the reluctance to restrain future acts merely threatened, it is also the general rule that equity will not enjoin the discretionary functions of public officials. Id. In Ringwood Solid Waste Mgt. Auth. v. Ringwood, 131 N.J. Super. 61 *236 (Law Div. 1974), the Court refused to restrain a municipality from adopting an ordinance, saying the Court has no authority to prevent a legislative branch from meeting and addressing legislation. When this rule is added to the circumstance that no actual threat has been made in the present case, and the further fact that the contents of any new ordinance cannot be known at this time, the proper exercise of discretion requires the denial of the restraint. This will not prevent my consideration of the issue raised by the Home, namely, whether any new legislation should be applied to it, after a new ordinance has been adopted. At that time, the question of the Home's right to proceed with its expansion will be considered.
Jurisdiction is retained.

THE BAPTIST HOME'S RIGHT TO A VARIANCE
The Borough of Riverton adopted a new zoning ordinance within the time limits provided by this court. The new regulations effectively prohibit the establishment of health care facilities, thereby denying Baptist Home the right to expand its use. The Home now applies for further relief by way of motion for summary judgment. It contends that it is entitled to a variance, regardless of the new ordinance, which may be granted by this court on the basis of the record below.

I. THE FINAL DECISION RULE
The Home argues that the invalidation of the prior zoning ordinance automatically entitles it to proceed with the proposed expansion of its facilities. This would follow if Riverton's new zoning ordinance is denied retroactive effect since the Home's application would be uncontrolled by any zoning ordinance. However, the long-standing rule in this state is that a court must apply the law in existence at the time of its decision when resolving litigated issues. Hohl v. Readington Twp., 37 N.J. 271, 279 (1962). The rule has been criticized and somewhat eroded in recent opinions, e.g., Kruvant v. Cedar Grove, 82 N.J. *237 435 (1980); Urban Farms v. Franklin Lakes, 179 N.J. Super. 203 (App.Div. 1981). Under the facts of this case, however, the new ordinance must be applied to the Home's variance request. The new ordinance was adopted pursuant to the order of this court. While its provisions frustrate the Home's plans, that was not the essential purpose of the legislation. Riverton's old ordinance, as a result of procedural error, established an "imperfectly expressed legislative policy", a circumstance which has been held to require retroactive application of the new ordinance. Urban Farms, supra.
This conclusion does not mean that the variance issue must be remanded to the Riverton Board of Adjustment for consideration under the new ordinance. The inherently beneficial aspects of the Home's use, coupled with the peculiar facts of this case, for the reasons discussed below, make that unnecessary.

II. THE "INHERENTLY BENEFICIAL USE": ITS CONSEQUENCES
The Home's application for a variance was based upon N.J.S.A. 40:55D-70d, which provides that variances may be granted "[i]n particular cases and for special reasons...." Section 70 concludes:
No variance or other relief may be granted under the terms of this section unless such variance or other relief can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance.
"Special reasons" are frequently referred to as "positive criteria". The burden of proving their existence is upon the Home. Fobe Associates v. Demarest, 74 N.J. 519 (1977). Satisfaction of that condition is not difficult in the case of an inherently beneficial use, since our cases hold that the use itself supplies the special reasons. Such is the case here. The use to which the Home proposes to put its property is "inherently beneficial." The basis for that conclusion and the dimensions of the use require discussion.
*238 The Baptist Home is a non-profit, charitable New Jersey corporation organized to supply long term residential care to elderly Baptists. It serves the needs of South Jersey residents, regardless of their economic circumstances. Its Riverton facility, the expansion of which was authorized some years ago by a zoning variance, has a population of 73 residents and a staff of 65. The proposed new expansion would provide space for 39 new residents and would require an additional staff of 25. The facility is now at capacity; 93 persons are currently waiting for admission.
On December 1, 1981, the State Department of Health issued a certificate of need for the proposed expansion, which stated:
The applicant has demonstrated a special need for the expansion of residential care services. The Baptist Home of South Jersey provides care specifically for the aged Baptists of Southern New Jersey. Currently, the Baptist Home has a waiting list of individuals who are in need of residential care.
Certificates of need are issued pursuant to N.J.S.A. 26:2H-7. Agency criteria are set forth in N.J.A.C. 8:33-2.7, which requires "[r]eview, evaluation and recommendations ... based upon the following:
The availability of less costly or more effective alternative methods of providing the services to be offered, expanded, reduced, relocated, or eliminated;
........
The need that the population served or to be served has for the services proposed to be offered or expanded, and the extent to which all residents of the area, and in particular low income persons, racial and ethnic minorities, women, handicapped persons, and other underserved groups, and the elderly, are likely to have access to those services....
........
The contribution of the proposed service in meeting the health related needs of members of medically underserved groups which have traditionally experienced difficulties in obtaining equal access to health services....
The issuance of a Certificate of Need by the State bears directly upon the Home's status as an inherently beneficial use. In Urban Farms v. Franklin Lakes, supra, the court said:
We have no doubt that a nursing home, whether or not non-profit comes within the inherently beneficial category, particularly where, as here, the *239 Certificate of Need has been granted and more than a third of its beds have been committed to Medicaid recipients, i.e., indigents. [Id. 179 N.J. Super. at 212.]
Moreover, our zoning decisions have long recognized certain uses as inherently serving the public welfare. Health care facilities have been among them. Thus, in Kohl v. Fair Lawn, 50 N.J. 268 (1967), the court said:
The cases in this Court in which a significant factor has been the contribution of the proposed use to the "general welfare" all have involved uses which inherently served the public good. Of course, the processing and distribution of milk does serve the general welfare. However, this activity, unlike a school or hospital, does not in itself provide the basis for a finding of special reasons any more than does the manufacture and distribution of any other necessary commodity. In all the above cited cases, the very nature of the use gave rise to special reasons for the grant of a variance and in those cases we do not require a finding that the general welfare would be best served by locating the proposed use at the specific site in question. Where, however, the use is not of the type which we have held of itself provides special reasons, such as a school or hospital, there must be a finding that the general welfare is served because the use is peculiarly fitted to the particular location for which the variance is sought. [citations omitted; Id. at 279.]
Numerous non-profit, institutional, public or quasi-public uses have been described by the courts as "inherently beneficial", e.g., low and moderate income housing, senior citizen housing, and parochial schools. Rolfe v. Bor. of Emerson, 141 N.J. Super. 341, 355 (Law Div. 1976). Institution-like profit-making uses serving regional needs have been recognized as similarly beneficial and as therefore satisfying any zoning requirement for the showing of "special reasons", e.g., a telephone equipment building, a sewage treatment plant, a private hospital for the emotionally disturbed, a private day nursery, a private school and private middle income multiple family housing. Rolfe v. Bor. of Emerson, supra, at 355-356. The Home's proposed use of its property cannot be distinguished in character from these uses. It fits almost exactly the nursing home concepts set forth in Urban Farms.
Apart from its role in furthering comprehensive health care planning, the proposed use also advances the purposes set forth in the Municipal Land Use Law, N.J.S.A. 40:55D-2, namely (in part):

*240 a. To encourage municipal action to guide the appropriate use or development of all lands in this State, in a manner which will promote the public health, safety, morals, and general welfare;
........
d. To ensure that the development of individual municipalities does not conflict with the development and general welfare of neighboring municipalities, the county and the State as a whole;
........
f. To encourage the appropriate and efficient expenditure of public funds by the coordination of public development with land use policies;
........
m. To encourage coordination of the various public and private procedures and activities shaping land development with a view of lessening the cost of such development and to the more efficient use of land. .. .
The essential public services performed by the Home, its receipt of a Certificate of Need and its satisfaction of the purposes of the Municipal Land Use Law overwhelmingly support the conclusion that special reasons exist for the proposed use. The required proof of positive criteria has been supplied.

III. BALANCING THE NEGATIVE CRITERIA
Proof of "positive criteria" is not enough. It is also the applicant's burden to prove the lack of "negative criteria." Fobe Associates v. Demarest, supra. This requires a showing that the grant of the requested variance will not constitute a substantial detriment to the public good or substantially impair the intent and purpose of the zone plan and zoning ordinance. N.J.S.A. 40:55D-70d. The Home's application below was denied in part because of the Board's finding that the negative criteria had not been satisfied. Its significant findings were that the proposed use invited traffic problems, would have an adverse economic impact on individual properties, would result in excessive density and would impair the municipal plan for the creation of an historic district.
Establishing the absence of negative criteria may present a difficult hurdle. Under the statute, such criteria will *241 not defeat an application unless they are "substantial". However, that word, intentionally or unintentionally, may be interpreted subjectively. It has not been defined by the courts. Since municipal action has presumptive validity and will not be upset by the courts unless it is shown to have been arbitrary, Black v. Montclair, 34 N.J. 105, 133 (1961), a municipal conclusion that the detrimental aspects of the variance application are "substantial" may be unassailable. As a consequence, a variance for an inherently beneficial use may be impossible to obtain, notwithstanding a significant public need for the undertaking. This is the problem raised in these proceedings.
The majority of the cases involving institutional uses, most of which are listed in Rolfe v. Bor. of Emerson, supra, contain little discussion of negative criteria. In cases such as Urban Farms, supra, where it is discussed, there is a clear finding that the criteria has been satisfied. The fact that nearly every variance has some negative effect on the zoning plan and the zoning ordinance is often noted, see, e.g., Yahnel v. Bd. of Adj. of Jamesburg, 79 N.J. Super. 509, 519 (App.Div. 1963), and lip service paid to the requirement that positive criteria and negative criteria must be balanced. For example, in Three L Corp. v. Bd. of Adj. of Newark, 118 N.J. Super. 453 (Law Div. 1972), the court reversed the denial of a variance that would have permitted operation of a private day nursery in a residential district. The denial by the Board below was based upon traffic congestion, parking problems, noise and alteration of the residential character of the neighborhood. The court said:
Taking the three reasons stated for denial, and weighing them against the benefits to the neighborhood in the form of preschool educational opportunities for children and assistance to working mothers by providing a state-approved facility for organized and adequate day care, the court concludes that the evidence offered by the applicant is sufficient to support a finding that the "special reasons" required by statute have been shown. As to the requirement of a showing of no substantial detriment to the public good, the school, as the record indicates, not only would not be a detriment to the public good but rather would make a contribution to the public weal. [Id. at 460-461.]
*242 The best discussion of negative criteria and its use in the balancing test is found in Yahnel v. Bd. of Adj. of Jamesburg, supra:
Plaintiffs challenge the finding of the board that the variance will not substantially impair the intent and purpose of the zone plan and zoning ordinance. The key word here is "substantially". It comes from the statute itself. Obviously, any permission for a nonresidential use in a residential zone may have some tendency to impair residential character, utility or value. But the statutory rationale of the function of the board of adjustment is that its determinations that there are special reasons for a grant of variance and no substantial detriment to the public good or impairment of the zone plan, etc., in such grant represent a discretionary weighing function by the board wherein the zoning benefits from the variance are balanced against the zoning harms. If on adequate proofs the board without arbitrariness concludes that the harms, if any, are not substantial, and impliedly determines that the benefits preponderate, the variance stands. [Id., 79 N.J. Super. at 519.]
Numerous cases have considered the problem of inherently beneficial uses involving variance applications: Andrews v. Ocean Twp. Bd. of Adj., 30 N.J. 245 (1959) (affirmed grant of variance to permit operation of parochial school with living quarters for teachers in residential zone); Kunzler v. Hoffman, 48 N.J. 277 (1969) (affirmed grant of variance to private mental hospital); Black v. Montclair, 34 N.J. 105 (1961) (affirmed grant of variance to locate school in residential zone); DeSimone v. Greater Englewood Housing Corp., 56 N.J. 428 (1970) (affirmed grant of variance to non-profit, governmentally financed low and moderate income housing project); Yahnel v. Bd. of Adj. of Jamesburg, supra, (affirmed grant of variance for construction of building housing telephone equipment); Bonsall v. Tp. of Mendham, 116 N.J. Super. 337 (App.Div. 1971) (affirmed grant of variance to construct building over dog run operated by Seeing Eye.); Urban Farms v. Franklin Lakes, 179 N.J. Super. 203 (App.Div. 1981) (reversed governing body's denial of a special exception for a nursing home); Wickatunk Village v. Tp. of Marlboro, 118 N.J. Super. 445 (Ch.Div. 1972) (denial of variance for tertiary sewage treatment plant reversed); Bor. of Roselle Park v. Tp. of Union, 113 N.J. Super. 87 (Law Div. 1970) (affirmed grant of variance to construct senior citizens' housing project); Three L Corp. v. Bd. of Adj. *243 of Newark, supra, (denial of variance to permit private day nursery in residential district reversed.) None of these cases, with the exception of the quoted discussions in Yahnel and Three L Corp., contain any helpful consideration of negative criteria and the balancing test. They do, however, reflect the deference paid to inherently beneficial uses in variance cases. In every cited instance, the use was permitted by the courts. The opinions frequently discuss the contribution of the use to the public good. It is fair to conclude that the inherently beneficial nature of a particular use weighs heavily on the side of the applicant.
When a variance for an inherently beneficial use is denied, as it was here, because of a municipal determination that substantial negative criteria exist, the question of the court's responsibility when the denial is appealed is pointed and difficult. The problems are illustrated by Roman Catholic Diocese of Newark v. Ho-Ho-Kus Bor., 47 N.J. 211 (1966). There, the court found that an ordinance preventing construction of a parochial high school in a residential zone was valid. It suggested that a variance application might be appropriate, noting that the school use satisfied the positive criteria required for a variance because of its "educational mission." Id., at 217. At the same time, it recognized the possibility that negative criteria existed on the basis of which the municipality could refuse relief. Justice Hall, in a concurring opinion, found this conclusion unacceptable. He said:
What is most unsatisfactory to me, however, is that the plaintiff is now left with only the possibility of applying for a use variance for "special reasons" under N.J.S.A. 40:55-39(d) [now 40:55D-70d]. That possibility may well be illusory indeed, under the current scope of judicial review of municipal administrative action, if the borough board of adjustment denies a recommendation or the governing body disapproves the recommendation in the event one is made. While I think it is safe to say that a court, on an administrative record akin to the present evidence, would sustain the grant of a variance ... it is not at all certain that the denial of a variance would be upset. [Citations omitted; Id. at 222.]
He would require that institutions serving the public welfare be permitted to locate in any zone of a municipality "where the *244 physical impact of their operations can be alleviated to a reasonable extent by the imposition of suitable conditions and restrictions." Id. at 222. He added:
Regional or for that matter, local institutions generally recognized as serving the public welfare are too important to be prevented from locating on available, appropriate sites, subject to reasonable qualifications and safeguards, by the imposition of exclusionary or unnecessarily onorous municipal legislation enacted for the sake of preserving the established or proposed character of a community or some portion of it ... or to further some other equally indefensible parochial interest. [Id. at 223.]
It was his view that, absent legislation, a special reasons variance "must be granted [for an inherently beneficial use] in appropriate fact situations subject to reasonable conditions prescribed by the local agency." Id. at 224.
The difficulties that were stressed by Justice Hall are even more significant now. Important changes have occurred, which emphasize the public interest in the establishment of institutional undertakings, especially health care facilities. The Municipal Lane Use Law was adopted after the decision in Catholic Diocese. Among its purposes are promotion of public health and coordination of land development inside a municipality with the "development and general welfare of neighboring municipalities, the County and the State as a whole." The statutes establishing certificate of need requirements and providing increased control over health care facilities by the State Department of Health were enacted after Justice Hall wrote his concurring opinion. The Mt. Laurel decision, Burlington County NAACP v. Mt. Laurel, 92 N.J. 158 (1983), now mandates the consideration of regional needs for housing, in some cases an inherently beneficial use. Justice Hall's recommendations could be followed here. He believed the courts had authority to adopt his approach. Id. at 224. That route, however, seems inappropriate for a trial court even though the direct question has not been addressed before and principles of staere decisis may not apply. A more traditional route, clearly available, is to be preferred. That route requires a careful *245 analysis of the balancing test and its application to inherently beneficial uses.
Catholic Diocese does not discuss this issue. The comments of the majority, however, implicitly suggest that the everpresent enhancement of the public good when an inherently beneficial use is involved weighs heavily on the side of the applicant seeking a variance. The court said:
Plaintiff remains free to apply for a variance. In this connection some observations seem appropriate without in any way intimating an opinion as to the outcome of an application. The educational mission of a regional high school is clearly a "special reason" within the meaning of the statute just cited. Hence the question will be whether a sound exercise of discretion requires that the school be permitted. In dealing with that question, the local authorities should consider the State policy favoring such exempt functions and the fact that regional needs must be met somewhere. Unfortunately under present law the tax burden falls upon the single municipality rather than the whole area which is benefitted. Yet a variance may not be refused on that account. Consideration should also be given to the limited number of sites available to a charity for the reason that it cannot invoke the power of eminent domain. It would not be amiss to weigh also the circumstance that here the proposed use was authorized by the ordinance at the time plaintiff purchased the property. Finally, and of special importance in deciding whether the property can be put to the proposed use without substantial detriment to the public good and without substantially impairing the intent and purpose of the zone plan and the zoning ordinance, is the question whether the parcel is of such size and situation that, with suitable conditions, the proposed use will not subject the area to the conditions and influences which were the basis of the original zoning decision to exclude schools from this district. The burden of supplying an adequate buffer would be upon plaintiff, and indeed it would be incumbent on plaintiff to propose specific measures and to demonstrate their sufficiency to that end. [Citations omitted; Id. 47 N.J. at 217-18.]
Roman Catholic Diocese, Yahnel, Three L, Kruvant and Urban Farms reflect the developing tension between the balancing test and the negative criteria. It is apparent that there can be no balance if the negative criteria have an everpresent capacity to require denial of a variance because of a local conclusion that such criteria are "substantial" when the word "substantial" has not been defined. The statute, with respect to negative criteria provides:
No variance or other relief may be granted under the terms of this section unless such variance or other relief can be granted without substantial detriment *246 to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance.
No obligation to balance the negative criteria against the positive is mentioned. Read literally, the statute would require the denial of any variance application which, if granted, would, in the judgment of the municipal agency, be substantially detrimental. It has long been recognized, however, that statutes are to be read sensibly, not literally, with legislative intent as the controlling factor. Suter v. San Angelo Foundry & Mach. Co., 81 N.J. 150 (1979). Our courts have developed the balance test as an interpretation of that intent. The interpretation is sensible; it permits appropriate weight to be given to the positive criteria, which could otherwise be eclipsed routinely by a local finding of "substantial" negative criteria. The balancing test and the statutory language, while seemingly inconsistent, need not be. They become compatible when a proper definition of "substantial" is accepted, namely, that the negative criteria are "substantial" when they are so heavy that they outweigh the positive criteria in the balancing test. The definition is a necessity. If the rule were otherwise, the presence of "substantial" negative criteria, defined in any different way, would always defeat a variance. Further, it would deny the use of the balance test since negative criteria, if "substantial", would determine the variance question, even though outweighed by the positive.
The formula to be used in a variance application for an inherently beneficial use is therefore as follows:
(1) The fact that an inherently beneficial use automatically satisfies the positive criteria for granting a variance must first be realized.
(2) The dimensions of the public interest in having the particular use undertaken must be examined to see how heavily that interest weighs on the side of the positive criteria.
(3) The negative aspects of the use must be determined and their significance measured, applying the criteria set forth in N.J.S.A. 40:55D-70d. In doing so, it must be recognized that some public harm, such as traffic congestion, and some adverse impact upon the zone plan and zoning ordinance usually attends the introduction of such a use.
(4) The imposition of reasonable conditions upon the grant of the variance may alleviate its negative characteristics. When that is so, the significance of *247 the negative criteria must be measured upon the assumption that such conditions will be adopted.
(5) The positive aspects of the use must then be balanced against the negative. If the negative is outweighed by the positive, the negative is not "substantial" and a denial of the variance will be arbitrary.
(6) In a close case, the presumption that municipal action is valid requires the affirmance of a variance denial on appeal.
The formula satisfies the requirements of the balancing test and also recognizes the statutory criteria. While properly making it more difficult for municipalities to exclude inherently beneficial uses, it permits such exclusion when the negative impact of the use is significant. It also preserves the right of the municipality to impose appropriate conditions upon such uses.
The application of the formula to the Baptist Home makes it obvious that the variance must be granted. The Home is a health care facility. It provides an essential public service on a regional basis. In Urban Farms v. Franklin Lakes, supra, the court, dealing with a nursing home, pointed out that state and Federal governments have adopted legislation making it "abundantly clear ... that residential health care facilities of whatever nature constitute an integrated, comprehensive system of health care delivery service subject to unified and integrated state policy, planning and control." Id. 179 N.J. Super. at 216. Our Legislature, in N.J.S.A. 26:2H-1, has provided that the State Department of Health
shall have the central, comprehensive responsibility for the development and administration of the State's policy with respect to health planning, hospital and related health care services and health care facility cost containment programs, and all public and private institutions, whether State, county, municipal, incorporated or not incorporated, serving principally as residential health care facilities ... shall be subject to the provisions of this act.
N.J.S.A. 26:2H-8 further provides:
In the case of an application by a health care facility established or operated by any recognized religious body or denomination the needs of the members of such religious body or denomination for care and treatment in accordance with their religious or ethical convictions may be considered to be a public need.
No health care facility may operate without a license issued by the State Department of Health. N.J.S.A. 26:2H-12.
*248 The rejection of a health care facility's variance application obviously interferes with State control over such facilities. It also stifles promotion of the public health and general welfare, important purposes of our Municipal Land Use Law. That promotion is directly affected by the ability or inability of a particular institution to use specific land within a municipality. Municipalities are required, not only by the Municipal Land Use Law in its recitation of purposes, but by the Supreme Court in So. Burlington Cty. NAACP v. Mt. Laurel, supra, to consider needs beyond their borders. Denial of a variance to the Home, which serves the entire South Jersey area, ignores that requirement. Some recognition of the zoning problems of institutions has been provided by N.J.S.A. 40:55D-66 & 66.1, which exempts schools, group homes, community residences for the developmentally disabled and community shelters for victims of domestic violence from zoning regulations. Health care facilities are not mentioned. It is clear, however, that such facilities, if owned and operated by the State instead of being privately owned and controlled by the State, would be almost entirely immune from restrictions imposed by local zoning ordinances. Berger v. State, 71 N.J. 206, 364 A.2d 993 (1976); Rutgers v. Piluso, 60 N.J. 142 (1972); Pemberton Tp. v. State, 178 N.J. Super. 346 (App.Div. 1981). The distinction is so narrow as to be artificial, at least in zoning cases.
The fact is that the Home satisfies an important public need. It is the subject of comprehensive legislation. It promotes some of the important purposes of our land use laws. It has a regional impact. All of these circumstances constitute positive criteria. They weigh heavily in considering the allowance of the requested variance. There are other considerations as well. The Home possesses a certificate of need covering its proposed expansion issued by the State Department of Health. The certificate states: "The applicant has demonstrated a special need for the expansion of residential care services." The fact that the use proposed by the Home merely enlarges an existing *249 use, allowed in part after an earlier variance had been granted, is proof that the use itself, though not the expansion thereof, has been accepted by the municipality in the location where it now exists.
The negative aspects of the Home's proposal, as found by the Board of Adjustment are: (1) a probable decrease in the value of neighboring properties; (2) an increase in traffic and parking problems; (3) increased density; (4) an undesirable impact upon the appearance of the community because of the proposed architectural design; and (5) the loss of historical value resulting from the removal of a dwelling from the construction site. While some of these problems are common to inherently beneficial institutional uses, they have validity and are entitled to respectful attention. Some of the problems can be alleviated or diminished by the imposition of conditions. For example, the historical dwelling, as suggested by the Home, can be moved to another location in the community. Appearance, if a problem, may be improved by a change in design. The record does not indicate that traffic problems would result in any "unmanageable congestion", the test suggested in Black v. Montclair, supra, 34 N.J. at 114. These negative aspects of the use, whether or not modified by conditions, coupled with the contested fact that property values in the neighborhood may decrease while the density of the Home's lot will increase, fall far short of outweighing the positive criteria present with respect to the proposed use. The health care provided by the Home to elderly Baptists, indigent or otherwise, the essential human services performed, the issuance of the certificate of need by the State Department of Health, and the promotion of the purpose of our Municipal Land Use Law evidence the very significant contributions the Home makes to the public good. Great weight must be given to them when the balance test is undertaken. In that test, applied here, the bad does not outweigh the good. The opposite is true. Consequently, the negative aspects of the use cannot be "substantial" and the variance must be granted.
*250 This conclusion does not require a remand of the matter to the Riverton Board of Adjustment for further consideration of the variance application, notwithstanding the adoption of a new ordinance after the Home's application was denied. The new ordinance is not material to the question presented. The considerations involved in deciding whether a variance should have been, or should be granted, are the same either with or without the ordinance. There is no likelihood that a remand will produce any change in result. The original, defectively enacted zoning ordinance was more liberal in its provisions affecting institutional uses than the new ordinance. The denial of the requested variance under the old ordinance is therefore less likely to be reversed under the new one. The voluminous record of the proceedings below is before this court. It was developed in the course of eleven hearings over a period of nine months. Further hearings cannot be expected to expose any additional facts of material substance. A round-robin of new municipal proceedings will result only in the presentation of the same question to this court at some later date after the expenditure of much unnecessary time and money. A remand for reconsideration of a variance application is not required when it will amount to "an empty formality." Verona v. Bor. of West Caldwell, 49 N.J. 274, 285 (1967). There is no need to exhaust administrative remedies when the pursuit of those remedies will be futile or illusory. Dimitrov v. Carlson, 138 N.J. Super. 52, 56 (App.Div. 1975); Deal Gardens v. Village of Loch Arbour, 48 N.J. 492, 497 (1967), is to the same effect. In AMG Associates v. Tp. of Springfield, 65 N.J. 101 (1974), the court said:
If ... [the Law Division] finds the variance should have been granted, its judgment will direct the appropriate local agency or agencies to do so, subject to such conditions as the court finds to be called for without requiring the applicant to go through a complete new variance proceeding at the local level. Where, however, past events or other circumstances make it clear that initial or further resort to the local administrative process would be futile (which appears to be the case here since the governing body had denied the initial variance application), the owner may bypass the local agencies and commence a prerogative *251 writ action in the Law Division for a declaration of invalidity as to the parcel. The court in such a case... may also declare the use to be permitted, and any conditions thereof, if such use accords with that requested by the plaintiff or if the circumstances clearly indicate that only it should be allowed, there being no pertinent issue of local zoning discretion involved, without remanding the matter to require the plaintiff to go through a new or original variance proceeding. [Fn. 3 at 109.]
In the present case, a remand for the purpose of reconsidering the decision to deny the variance would be futile and it will not be ordered. However, the question of conditions remains. They do involve a "pertinent issue of local zoning discretion," which should be addressed by the Riverton Board of Adjustment, now properly established by the new land use ordinance. It is not practical for this court to devise conditions or to decide whether any should be imposed. It will retain jurisdiction for the purpose of reviewing the reasonableness of any conditions imposed, if such review is requested.
In conclusion: the proposed use is permitted. The cause is remanded to the Board of Adjustment of the Borough of Riverton with the following directions:
(A) The variance hereby awarded may be subjected to conditions at the discretion of the Board. The conditions must be reasonable.
(B) In deciding the question of conditions, the Board is not to require the production of evidence which will duplicate that produced at the original hearings. The record of those hearings is to be considered when it addresses the remand, supplemented as the parties may consider appropriate.