739 A.2d 999 (1999)
325 N.J. Super. 490
MERIDIAN HOSPITALS CORPORATION, a nonprofit corporation, Plaintiff-Appellant,
v.
BOROUGH OF POINT PLEASANT, a municipal body politic of the State of New Jersey, Borough of Point Pleasant Zoning Board of Adjustment, a municipal body of the Borough of Point Pleasant, County of Ocean, State of New Jersey, and John Wardell, Zoning Officer of the Borough of Point Pleasant, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued September 27, 1999.
Decided November 12, 1999.
*1000 Mark L. First, Princeton, for plaintiff-appellant (Reed Smith Shaw & McClay, attorneys; Mr. First, of counsel and on the brief with Stacy S. Cohen).
Jerry J. Dasti, Forked River, for defendants-respondents Borough of Point Pleasant and John Wardell (Dasti, Murphy & Wellerson, attorneys; Mr. Dasti, of counsel and on the brief).
Steven A. Zabarsky, Toms River, for defendant-respondent Borough of Point Pleasant Zoning Board of Adjustment (Citta, Holzapfel, Zabarsky & Leahey, attorneys; Mr. Zabarsky, of counsel and on the brief).
Before Judges HAVEY, KEEFE and A.A. RODRÍGUEZ.
The opinion of the court was delivered by *1001 HAVEY, P.J.A.D.
In this zoning case, plaintiff Meridian Hospitals Corporation (Meridian) appeals from the denial of its application for a special reasons variance to utilize two floors of the Point Pleasant Hospital for a nursing home. The Borough of Point Pleasant Zoning Board of Adjustment (Board) denied the variance, concluding that the proposed nursing home use was "part of [Meridian's] systematic dismantling" of acute-care services at the hospital "to the greater detriment of the Point Pleasant community." The trial judge agreed with the Board, and upheld the denial.
We reverse. Meridian's proposed plan to decommission the hospital's acute-care services is unrelated to and unaffected by its application for the special reasons variance. The plan was occasioned by a lack of need for acute care at the hospital and cost-saving considerations, and was subject to review by the State Department of Health & Senior Services (DHSS) pursuant to the DHSS's Certificate of Need procedure. The Board's denial of the variance based on Meridian's plan was therefore arbitrary, capricious and unreasonable.
Meridian, a nonprofit entity, owns and operates the Point Pleasant Hospital in the Borough of Point Pleasant, Ocean County. The facility is situate on 11.7 acres and located in the "hospital" zone, which permits hospitals and various accessory uses, but specifically excludes nursing homes. The facility is surrounded by the Manasquan River and residential zones consisting of single-family, detached housing units on individual lots.
Point Pleasant Hospital is presently licensed by the DHSS as an acute-care facility. However, the hospital has been on the decline for a number of years. In 1990, it had approximately 330 licensed beds. In 1997, the number of licensed beds was reduced to 136. As of the time of the Board hearings, only fifty beds were staffed and in use. The third and fourth floors of the building have remained essentially vacant since 1996, when seventy-eight acute-care beds were "delicensed." Each of the two floors has roughly 12,000 square feet.
In 1997, Meridian entered into negotiations with Ocean Convalescent Center, a licensed nursing home operator. Meridian planned to lease the third and fourth floors of the hospital to Ocean Convalescent for use as a sixty-one bed nursing home. On February 14, 1997, Ocean Convalescent obtained approval from DHSS to transfer sixty-one nursing home beds from its Lakewood facility to the Point Pleasant Hospital facility.
Meridian applied to the Borough's zoning officer for an interpretation of the zoning ordinance to determine whether the nursing home was a permissible use. The zoning officer advised Meridian that it was not, and that it was necessary for Meridian to apply for a special reasons variance with the Board. Meridian thereafter made the application pursuant to N.J.S.A. 40:55D-70d.
During the Board hearing, Meridian's Associate Executive Director, John Rauner, testified that the proposed nursing home use did not require changes to the exterior of the hospital structure. Interior alterations were required to comply with state regulations; patient rooms would be renovated, and bathroom facilities and an eating area would be installed. A courtyard enclosed within the perimeter walls of the hospital would be converted to a recreational area. The patients would not have access to the streets or sidewalks, and no additional parking spaces would be needed.
Rauner also stated that ancillary support, such as food service, engineering, maintenance, laundry, laboratory and x-ray services would be provided to the nursing home patients by the hospital. He testified that the nursing home would have no impact on the medical services provided by the hospital. When pressed by Board *1002 members and objectors as to the hospital's plan to decommission its acute-care facility, Rauner acknowledged that Meridian was studying a proposal to convert the hospital from an acute-care facility to an urgent-care facility. Rauner explained that such a conversion would require Meridian to obtain a Certificate of Need from the DHSS. Rauner and Meridian's counsel made clear that, whether or not the variance application was approved, Meridian intended to proceed with its plan to decommission its acute-care facility, including the emergency room, at the hospital.
Andrew Shawn, Administrator of the Ocean Convalescent Center, testified that his present facility in Lakewood is a nonconforming wood-frame dwelling requiring a "waiver" from the DHSS. The nursing home's move to Point Pleasant Hospital would comply with the DHSS's standards and permit the facility to serve Medicare patients. Meridian would install a "sophisticated" security system to prevent unwarranted ingress to and egress from the facility by patients. He stated that the quality of life of the nursing home patients "would be greatly enhanced" by the optimum space provided by the wide hallways and larger rooms at the hospital facility. Meridian estimated that the cost of renovations would approximate $1 million.
Daniel McSweeney, a licensed planner, testified on behalf of Meridian. Noting that a nursing home is an "inherently beneficial use," McSweeney was of the view that reuse of the vacant third and fourth floors of the hospital would have a "positive impact on both the hospital and the borough." He testified that the growing aging population in Ocean County was a factor supporting the need for nursing homes. Further, he described the nursing home's shared physical and functional attributes with the hospital, as well as the available facilities such as elevators, delivery locations and existing means of ingress to and egress from the facility.
McSweeney added that, although nursing homes are permitted in a residential zone of the Borough, the zone was fully developed and it was not feasible to demolish existing structures for the purpose of constructing a nursing home facility. He also stated that the nursing home would have a negligible impact on surrounding properties, since no exterior renovations of the building would take place, no additional parking was necessary, and existing ingress to and egress from the site would not be changed. It was his view that there would be no impairment to the intent and purpose of the zoning plan and no adverse effect on the public good.
Several members of the Point Pleasant community testified in opposition to the application, focusing on the detrimental effect to the community if the hospital's emergency room and acute-care services were phased out by Meridian. Board members asked Meridian's counsel whether Meridian would be willing to agree to a condition to the special reasons variance that the level of services at the hospital would not change. Meridian's attorney rejected the offer, reasoning that the nursing home application should be considered on its own merits without consideration of any plans by Meridian to decommission or convert the present acute-care facility.
The Board denied the application. Instead of focusing on the positive and negative criteria associated with the proposed nursing home use, the Board stressed Meridian's plan to phase out acute care at the hospital. In its resolution, the Board found:
the relief requested by applicant ... cannot be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of the zone plan and Zoning Ordinance of the Borough of Point Pleasant, for the following reasons:
1. That the conversion of hospital beds for nursing home beds is part of a systematic dismantling of hospital services at Point Pleasant Hospital to the greater *1003 detriment of the Point Pleasant community.
2. Every hospital bed that is replaced with a nursing home bed effectively downsizes or eliminates potential acute care beds to be utilized at that location in the future.
3. The hospital is a greater inherently beneficial use than the nursing home and utilization of the hospital zone for nursing home care works to eliminate the greater inherently beneficial use to the community.
4. The hospital will not commit to, nor guarantee any level of services at the hospital.
Meridian filed an action in lieu of prerogative writs challenging the validity of the hospital zone of the ordinance, arguing that the ordinance arbitrarily excluded nursing homes from the zone. It also challenged the denial of its special reasons variance, claiming that the Board exceeded its powers in considering Meridian's potential plan to decommission acute care at the hospital.
Addressing the denial of the variance first, the trial judge upheld the Board's decision. Applying the balancing test addressed in Sica v. Board of Adjustment, 127 N.J. 152, 165, 603 A.2d 30 (1992), the judge found that the Board properly identified the "public interest at stake" to be the "potential elimination of a permitted beneficial hospital use." The judge observed that the "elimination of potential hospital beds in the future was a detriment to the public health, safety and welfare." The judge also cited Meridian's refusal to accept "reasonable conditions" that the present acute-care facility be maintained if the variance was approved, reasoning that "this condition could have effectively reduced the detrimental [e]ffect of the granting of the variance by insuring that ... the integrity of the hospital zone would continue into the future." The trial judge also upheld the ordinance, concluding that the Borough had drawn a "reasonable distinction between hospitals and nursing homes," noting that nursing homes are permitted in other zones of the municipality.
Since the Law Division judgment, Meridian applied for and received a conditional Certificate of Need on October 9, 1998, to decommission all licensed acute-care services at the hospital and to transfer the services to Meridian's Brick Hospital situate in contiguous Brick Township. However, the Commissioner conditioned his approval upon Meridian maintaining:
24-hour coverage at an urgent care facility located at the ... Point Pleasant site. The services provided at this site shall include, but not be limited to, laboratory, radiology, and EKG services. The site shall be staffed by physicians and support personnel trained and certified, as applicable, in emergency medicine. Specific services shall include, but not be limited to, care of fractured bones, sprains, first and second degree burns, head injuries without loss of consciousness, asthma and pulmonary episodes, gastrointestinal ailments, and any other care that does not require the use of a full service emergency room.
I
The basic zoning principles implicated here are well-settled. N.J.S.A. 40:55D-70d authorizes a board of adjustment to grant a variance and permit a nonconforming use of zoned property "[i]n particular cases for special reasons...." Before a board grants the variance, it must find that: (1) "special reasons" exist for the variance (the "positive" criteria); and (2) the variance can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance (the "negative" criteria). Ibid.; Burbridge v. Governing Body, 117 N.J. 376, 384-85, 568 A.2d 527 (1990).
The term "special reasons" incorporates the purposes of zoning set forth in the Municipal Land Use Law (MLUL), *1004 N.J.S.A. 40:55D-1 to -136, including the goal of encouraging "the appropriate use or development of all lands ... in a manner which will promote the public health, safety, morals, and general welfare...." N.J.S.A. 40:55D-2a; see also Burbridge, supra, 117 N.J. at 386, 568 A.2d 527; Kohl v. Mayor of Fair Lawn, 50 N.J. 268, 276 n. 3, 234 A.2d 385 (1967). Generally, the positive criteria test is satisfied if the applicant proves that the use promotes the general welfare because the proposed site is particularly suitable for the proposed use. New Brunswick Cellular Tel. Co. v. Borough of South Plainfield Bd. of Adjustment, 160 N.J. 1, 14, 733 A.2d 442 (1999); Smart SMR of N.Y., Inc. v. Borough of Fair Lawn Bd. of Adjustment, 152 N.J. 309, 323, 704 A.2d 1271 (1998). However, if the proposed use is inherently beneficial, an applicant's burden is lessened to a significant degree. "An inherently beneficial use presumptively satisfies the positive criteria." Smart SMR of N.Y., Inc., supra, 152 N.J. at 323, 704 A.2d 1271; see also Medici v. BPR Co., 107 N.J. 1, 12, 526 A.2d 109 (1987) (listing cases involving inherently beneficial uses).
There is little question in this case that the proposed nursing home is an inherently beneficial use. See Mercurio v. DelVecchio, 285 N.J.Super. 328, 336-37, 666 A.2d 1368 (App.Div.) (expansion of existing nursing home promoted general welfare because a nursing home is an inherently beneficial use), certif. denied, 144 N.J. 377, 676 A.2d 1092 (1996); Urban Farms, Inc. v. Borough of Franklin Lakes, 179 N.J.Super. 203, 212, 431 A.2d 163 (App.Div.) (holding that "a nursing home, whether or not nonprofit, comes within the inherently beneficial category, ... where, ... a certificate of need has been granted and more than a third of its beds have been committed to Medicaid recipients ...."), certif. denied, 87 N.J. 428, 434 A.2d 1099 (1981). The Board in this case concedes as much.
In a case where the proposal is not an inherently beneficial use, the negative criteria are satisfied if the variance can be granted without substantial detriment to the public good and the applicant demonstrates through "an enhanced quality of proof ... that the variance sought is not inconsistent with the intent and purpose of the master plan and zoning ordinance." Medici, supra, 107 N.J. at 21, 526 A.2d 109. However, with an inherently beneficial use, the applicant need not meet Medici's enhanced quality of proof. Smart SMR of N.Y., Inc., supra, 152 N.J. at 323-24, 704 A.2d 1271; Sica, supra, 127 N.J. at 160-61, 603 A.2d 30. Instead, a board must balance the positive and negative criteria to determine whether a variance should be granted. When striking that balance:
First, the board should identify the public interest at stake. Some uses are more compelling than others....
Second, the Board should identify the detrimental effect that will ensue from the grant of the variance....
Third, in some situations, the local board may reduce the detrimental effect by imposing reasonable conditions on the use. If so, the weight accorded the adverse effect should be reduced by the anticipated effect of those restrictions.
Fourth, the Board should then weigh the positive and negative criteria and determine whether, on balance, the grant of the variance would cause a substantial detriment to the public good.
[Sica, supra, 127 N.J. at 165-66, 603 A.2d 30 (citations omitted).]
"This balancing, `[w]hile properly making it more difficult for municipalities to exclude inherently beneficial uses, ... permits such exclusion when the negative impact of the use is significant. It also preserves the right of the municipality to impose appropriate conditions upon such uses.'" Id. at 166, 603 A.2d 30 (quoting Baptist Home v. Borough of *1005 Riverton, 201 N.J.Super. 226, 247, 492 A.2d 1100 (Law Div.1984)).[1]

II
The Board argues that the "public interest at stake" in this case is Meridian's proposed "systematic dismantling" of the hospital's acute-care facility. The Board's resolution is unambiguous on this point:
That the conversion of hospital beds for nursing home beds is part of a systematic dismantling of hospital services at Point Pleasant Hospital to the greater detriment of the Point Pleasant community.
Fairly read, the Board's denial of Meridian's variance application was an attempt to compromise Meridian's statutory right to consolidate its health-care facility based on regional demand for services and cost-saving considerations. As such, the Board's denial of the variance application was an arbitrary and unreasonable exercise of its quasi-judicial powers. Preservation of the hospital's acute-care facility may indeed be Point Pleasant's goal. However, the Board exceeded its zoning powers by focusing on this public interest, rather than on the strict positive and negative considerations associated with the nursing home proposal itself.
Under Sica, "the public interest at stake" refers to the qualitative worth of the proposed use in the context of how it will benefit the public. 127 N.J. at 165, 603 A.2d 30 (noting that the benefits of some uses are so "compelling" that the Legislature has removed such uses from the powers of local land-use boards; others may be sufficiently beneficial to satisfy the positive criteria, and see examples cited therein). Thus, under Sica, the Board must decide whether the specific proposal, in this case the nursing home use, is sufficiently beneficial to outweigh the negative criteria. Id. at 165-66, 603 A.2d 30.
Identifying the "detrimental effect that will ensue" under the Sica balancing test, id. at 166, 603 A.2d 30, involves application of the negative criteria; that is, whether the variance "can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance." N.J.S.A. 40:55D-70d. The language "substantial detriment to the public good" focuses on the proposed use's effect on the surrounding properties and "whether or not it will cause such damage to the character of the neighborhood as to constitute `substantial detriment to the public good.'" Medici, supra, 107 N.J. at 22 n. 12, 526 A.2d 109. The second prong requires the Board to decide whether the grant of the variance will "substantially impair the intent and the purpose of the zone plan and zoning ordinance," that is, whether the proposed use is substantially consistent with the municipality's master plan and overall zoning scheme. Id. at 21, 526 A.2d 109.
The Board chose not to examine Meridian's application in the context of the above-described analysis under Sica. Instead, it presupposed that there was an interrelationship between the grant of the variance and Meridian's decommissioning of its acute-care facility.
The problem with the Board's findings is that the record fails to demonstrate a cause and effect relationship between the variance application and Meridian's decommissioning plan. Meridian's plan to convert to a nonacute health-care facility is based on a lack of demand for acute-care services at the hospital, as well as general market forces affecting health care on a *1006 regional and statewide basis. During the hearing, Meridian established, without contradiction, that 330 beds licensed in 1990 had been reduced to 136 by 1997, and, as of the time of the Board proceedings, only 50 beds were staffed and in use. The third and fourth floors of the north wing, where the nursing home would be situated, had been empty for over eighteen months. Meridian's officials made it clear to the Board that any decommissioning plan would proceed whether or not the variance for the nursing home was approved. Thus, equating the introduction of nursing home beds into the hospital complex with the "systematic dismantling" of the acute-care facility is factually flawed. It is also legally flawed because the perceived negative impact from the loss of acute-care facilities results from consideration having nothing to do with zoning.
The trial judge nevertheless concluded that the grant of the variance would frustrate the intent and purpose of the zone plan and zoning ordinance because the variance will "eliminate the potential for such space to be utilized for hospital purposes in the future." However, as noted, it is the absence of demand for acute care, not the application for a nursing home, that eliminated the use of beds for hospital purposes. Indeed, the judge himself observed at one point that "there's no reasonable probability based on the record that I've seen so far that they're ever going to go back to using this as a full blown acute bed facility because there is no overriding public need for it." In short, nothing in the record even suggests that the nursing home will eliminate the potential for future use of the beds for acute care.
Meridian's decommissioning plan is subject to the strict scrutiny of the DHSS pursuant to the Health Care Facilities Planning Act, N.J.S.A. 26:2H-1 to -78, and its attendant regulations, N.J.A.C. 8:33. Meridian must meet the Certificate of Need requirements under N.J.S.A. 26:2H-8 and N.J.A.C. 8:33-4.9, by satisfying the Commissioner that the plan may be implemented without an adverse financial impact on the delivery of health services in the region and state. The Commissioner must also consider the availability of nearby facilities to serve as alternate locations for in-patient acute care, N.J.S.A. 26:2H-8(a), with the overall view of deciding whether the plan will contribute to the orderly development of adequate and effective health-care services.
Pursuant to this Certificate of Need procedure, it was the role of the DHSS, not a board of adjustment, to determine whether the phase-out of acute care at the hospital was acceptable and consistent with state law. That determination was to be made even if Meridian had not applied for a variance.
Nevertheless, the Board suggested that the grant of the variance to Meridian be conditioned upon Meridian agreeing to maintain the present level of services at the hospital. A zoning board "may reduce the detrimental effect [of a variance] by imposing reasonable conditions on the use." Sica, supra, 127 N.J. at 166, 603 A.2d 30. However, a "condition" to a variance is generally "development-specific and [is] aimed at mitigating specific concerns arising in connection with the proposed project." William M. Cox, New Jersey Zoning and Land Use Administration § 28-4.1 (Gann, 1999). Such a condition "must be reasonably calculated to achieve some legitimate land use purpose." Berninger v. Board of Adjustment, 254 N.J.Super. 401, 405, 603 A.2d 954 (App. Div.), aff'd o.b., 127 N.J. 226, 603 A.2d 946 (1992); see also 3 Rathkopf, The Law of Zoning, § 40.02 (4th ed.1987). Here, the proposed condition was not intended to carry out a legitimate land-use objective. Its purpose was to thwart Meridian's application to consolidate its health services, not to mitigate specific concerns about the proposed nursing home use.
Further, a zoning board cannot impose conditions on a special reasons variance *1007 that would intrude upon subject matters exclusively within the jurisdiction of a state agency. Anfuso v. Seeley, 243 N.J.Super. 349, 368, 579 A.2d 817 (App. Div.1990); see also Baptist Home, supra, 201 N.J.Super. at 248, 492 A.2d 1100 (holding that "[t]he rejection of a health care facility's variance application obviously interferes with State control over such facilities"). Clearly, the proposed condition would have impinged upon the exclusive jurisdiction of the DHSS to determine whether the consolidation of Meridian's facility best served regional and statewide health-care needs.

III
Applying the Sica balancing test to the undisputed facts, we conclude that the Board's denial of Meridian's application was arbitrary, capricious, and unreasonable. As stated, a nursing home is an inherently beneficial use. The "public interest at stake" is the introduction of a nursing home to the hospital facility to serve the needs of the region's aged and infirm as well as the Point Pleasant community. See Urban Farms, Inc., supra, 179 N.J.Super. at 213, 431 A.2d 163 (holding that a land-use ordinance "must be regionally oriented in [its] provisions, prohibitions and concerns"). The proposed nursing home shares "significant physical and functional attributes" with the hospital use, even as converted to an urgent-care facility. Jayber, Inc. v. Municipal Council, 238 N.J.Super. 165, 177-78, 569 A.2d 304 (App.Div.), certif. denied, 122 N.J. 142, 584 A.2d 214 (1990). Meridian's Certificate of Need requires it to provide twenty-four hour diagnostic and nonacute care treatment by physicians and support personnel, including care of fractures, sprains, burns, head injuries, pulmonary episodes and gastrointestinal ailments. The nursing home itself will furnish food, shelter, nursing care, dietary and diagnostic services, recreational activity and supervision to a particularly vulnerable component of our society.
On the record before us, there is also no legal or factual support for a finding that a "detrimental effect ... will ensue from the grant of the variance." Sica, supra, 127 N.J. at 166, 603 A.2d 30. The footprint and outer structure of the hospital will remain unchanged; there will be no addition to the building or change in its facade. An enclosed courtyard will be converted to a recreational area. All ingress to and egress from the nursing home facility by patients and visitors will be through existing entrances and elevators. An alarm system and other devices will be employed to prevent unexpected access by patients to the outside area of the hospital facility. Traffic and parking needs will not be increased as a result of the nursing home use. No testimony was presented suggesting that the use will in any way affect the property values of the surrounding residential units. Notably, the Board made no findings concerning what negative impact would be suffered to the public or zoning scheme if the variance was granted. In short, weighing the positive and negative criteria, it cannot be said that the nursing home will "cause a substantial detriment to the public good." Ibid.

IV
In view of our reversal of the denial of Meridian's special reasons variance application, we need not address Meridian's contention that the hospital zone designation in the Borough's ordinance is unconstitutional. See Deal Gardens, Inc. v. Board of Trustees, 48 N.J. 492, 497-98, 226 A. 2d 607 (1967) (holding that a court should generally "decline to adjudicate the attack upon the [zoning] ordinance until the owner has exhausted his remedy before the board of adjustment").
Reversed and remanded for entry of judgment in Meridian's favor.
NOTES
[1] A 1997 amendment to N.J.S.A. 40:55D-70d codifies the Sica balancing test. Section d now provides:

No variance or other relief may be granted under the terms of this section, including a variance or other relief involving an inherently beneficial use, without a showing that such a variance or other relief can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance.
[L. 1997, c. 145, § 1 (added language underlined).]